1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    ZURICH AMERICAN INSURANCE                No. 2:18-cv-02066-TLN-CKD
      COMPANY OF ILLINOIS,
12
                       Plaintiff,
13                                              **ORDER**
              v.
14
      VFORCE INC.; CORTECH, LLC; and Does
15    1 to 100, inclusive,

16                     Defendants.

17
      _____
18    VFORCE INC.,

19                            Cross-Claimant,

20            v.

21    CORTECH, LLC,

22
                              Cross-Defendant.
23
24    ///

25    ///

26    ///

27    ///

28

                                            1

1  VFORCE INC.,

2                   Third-Party Plaintiff,

3      v.

4  BEAN TEAM NETWORK 2 LLC;
   CAPSERV, INC.; KAISERKANE
5  CONSULTING, LLC; MICHAEL
   DiMANNO; RICHARD GARDNER;
6  CHARLES MUSGROVE; MELISSA
   OGLESBY; HYBRID FINANCIAL GROUP,
7  LLC; CHARLES FORBES; and Roes 1
   through 30 inclusive,
8

9

10                  Third-Party Defendants.

11

12

13        This matter is before the Court on Cross-Defendant CorTech, LLC ("CorTech") and

14 Third-Party Defendants Accuire, LLC ("Accuire"), CapServ, Inc. ("CapServ"), KaiserKane,

15 Michael DiManno ("DiManno"), Richard Gardner ("Gardner"), Charles Musgrove ("Musgrove"),

16 Melissa Oglesby ("Oglesby"), and Charles Adam Forbes's ("Forbes") separate Motions to

17 Dismiss Defendant/Cross-Complainant/Third-Party Plaintiff VForce Inc.'s ("VForce") Cross-

18 Complaint and Third-Party Complaint.  (ECF Nos. 21, 38, 40, 61.)  VForce opposed all motions.

19 (ECF Nos. 28, 45, 46, 62.)  Only Forbes filed a Reply.  (ECF No. 63.)

20        Also before the Court is VForce's Motion for Leave to Amend its Cross-Complaint and

21 Third-Party Complaint and for Permissive Joinder.  (ECF No. 51.)  Eight of the Third-Party

22 Defendants filed an Opposition to the Motion and VForce filed a Reply.  (ECF Nos. 54–55.)

23        Lastly before the Court is Cory Barnwell of Barnwell Law Group, P.C.'s ("Barnwell")

24 uncontested Motion to Withdraw as counsel for seven of the eight Third-Party Defendants he

25 represents.  (ECF No. 48.)

26        For the reasons stated herein, VForce's Motion to Amend and for Permissive Joinder

27 (ECF No. 51) is GRANTED.  The Motions to Dismiss the Cross-Complaint and Third-Party

28 Complaint filed by CorTech, Accuire, CapServ, KaiserKane, DiManno, Gardner, Musgrove, and

1   Oglesby (ECF Nos. 21, 38, 40) are DENIED as moot.  Forbes's Motion to Dismiss the Third-

2   Party Complaint (ECF No. 61) is GRANTED with leave to amend.  Further, Barnwell's Motion

3   to withdraw (ECF No. 48) is GRANTED.

4   **I.   FACTUAL AND PROCEDURAL BACKGROUND**

5   Plaintiff Zurich American Insurance Company of Illinois ("Plaintiff") initiated this action

6   against Defendants VForce and CorTech (collectively, "Defendants") on July 28, 2018.  (ECF

7   No. 1.)  Immediately thereafter, the Court issued an Initial Pretrial Scheduling Order.  (ECF No.

8   5.)

9   On January 30, 2019, Plaintiff filed a First Amended Complaint ("FAC").  (ECF No. 6.)

10   The FAC generally alleges that Plaintiff entered into an agreement to issue a workers'

11   compensation insurance policy (the "Policy") to Defendants in exchange for an initial premium

12   payment, plus a supplemental payment in an amount to be determined by a post-remuneration

13   audit of the Policy (the "Zurich Agreement").  (*Id.* at 3.)  However, after Plaintiff completed the

14   remuneration audit, Defendants failed to pay the additional amount owed, despite multiple

15   requests.  (*Id.*)  Plaintiff further alleges VForce merged with and became the wholly-owned

16   subsidiary of CorTech on or about April 23, 2018.  (*Id.*)  The FAC asserts a single cause of action

17   against Defendants for breach of contract.  (*Id.* at 3–4.)  On March 12, 2019, VForce filed an

18   Answer to the FAC.  (ECF No. 14.)

19   That same day, VForce also filed a Cross-Complaint and Third-Party Complaint seeking

20   express and equitable indemnification, and breach of contract damages from CorTech and ten

21   Third-Party Defendants: Bean Team Network 2, LLC ("Bean Team"); Kaiserkane Consulting,

22   LLC ("Kaiserkane"); Hybrid Financial Group, LLC ("Hybrid"); Acuire; CapServ; Gardner;

23   Oglesby; Forbes; Musgrove; and DiManno (collectively, the "Third-Party Defendants").  (ECF

24   No. 15.)  The Cross-Complaint/Third-Party Complaint alleges that VForce and Bean Team

25   entered into an asset purchase agreement on December 22, 2014 ("VForce Agreement").  (*Id.* at

26   10–16 (Ex. A).)  Pursuant to a defense and indemnification clause in the VForce Agreement,

27   Bean Team agreed to indemnify VForce for any additional amounts due to Plaintiff under the

28   Zurich Agreement for the Policy.  (*Id.* at 5, 11–12.)  According to the Cross-Complaint/Third-

1   Party Complaint, Bean Team breached the VForce Agreement when it failed to pay Plaintiff the

2   supplemental payment owed on the Policy and failed to defend and indemnify VForce.  (*Id.* at 6–

3   7.)  As to the other Third-Party Defendants, VForce alleges Accuire later merged with or acquired

4   Bean Team, and CapServ, Kaiserkane, DiManno, Gardner, Musgrove, and Oglesby were

5   "Members" of Bean Team.  (*Id.* at 3.)  Bean Team subsequently dissolved and these Third-Party

6   Defendants, as successors-in-interest to Bean Team, became responsible for Bean Team's

7   obligations to VForce under the VForce Agreement.  (*Id.* at 3–6.)  Lastly, VForce alleges that

8   Forbes and Hybrid were the insurance broker and agent for VForce and Bean Team "with regards

9   to the purchase from Zurich of [the Policy]."  (*Id.* at 3, 6.)

10          On April 3, 2019, CorTech filed a Motion to Dismiss the Cross-Complaint pursuant to

11   Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (ECF No. 21.)  Thereafter, Third-Party

12   Defendants Accuire, CapServ, KaiserKane, DiManno, Gardner, Musgrove, and Oglesby moved

13   to dismiss the Third-Party Complaint, also pursuant to Rule 12(b)(6).  (ECF Nos. 38, 40.)  Bean

14   Team and Hybrid answered the Third-Party Complaint.  (ECF Nos. 39, 44.)  Though filed

15   separately, each motion to dismiss similarly challenges the Cross-Complaint and Third-Party

16   Complaint on the grounds that VForce fails to allege facts establishing each moving Defendant's

17   liability where it was not a party to either the VForce Agreement or the Zurich Agreement.

18   VForce filed separate Oppositions to each Motion to Dismiss.  (ECF Nos. 28, 45, 46.)  No replies

19   were filed.

20          On August 6, 2019, attorney Barnwell filed a Motion to Withdraw as counsel for the

21   Third-Party Defendants Bean Team, CapServ, Kaiserkane, DeManno, Gardner, Musgrove, and

22   Oglesby.  (ECF No. 48.)  Barnwell seeks to withdraw on the basis that the Third-Party

23   Defendants voluntarily terminated him and hired another attorney to represent them.  Barnwell's

24   Motion is unopposed.

25          On August 22, 2019, VForce filed a "Motion for Leave to Amend Its Crossclaim and

26   Third-Party Complaint and for Permissive Joinder" pursuant to Rules 15 and 20.  (ECF No. 51.)

27   By that Motion, VForce seeks to join eight of the current Third-Party Defendants as Cross-

28   Defendants to the Cross-Complaint and proposes additional allegations to support its existing

4

1    three claims, plus six new causes of action: (1) breach of the implied covenant of good faith and

2    fair dealing; (2) false promise; (3) intentional misrepresentation; (4) negligent misrepresentation;

3    (5) conspiracy; and (6) unfair competition.  (*Id.*)  On September 5, 2019, CorTech and the same

4    eight Third-Party Defendants opposed the Motion to Amend on the basis of undue delay.  (ECF

5    No. 54.)  The Third-Party Defendants further opposed the Motion for Permissive Joinder on the

6    basis that the proposed crossclaims against them are not related to Plaintiff's allegations in the

7    Complaint.  (*Id.*)  VForce filed a reply.  (ECF No. 55.)

8            On November 26, 2019, Forbes filed a Motion to Dismiss the Third-Party Complaint

9    pursuant to Rule 12(b)(6).  (ECF No. 61.)  Forbes argues that VForce's claim for equitable

10    indemnity fails as a matter of law because California law does not permit equitable apportionment

11    of damages for breach of contract claims and Forbes is not jointly and severally liable to Plaintiff.

12    (ECF No. 61 at 5–8.)  VForce opposed Forbes's Motion to Dismiss and Forbes filed a Reply.

13    (ECF Nos. 62–63.)

14            The Court will address each motion in turn.

15    **II.     MOTION TO AMEND THE CROSS-COMPLAINT AND THIRD-PARTY COMPLAINT**

16    **AND FOR PERMISSIVE JOINDER**

17            Defendant/Cross-Complainant/Third-Party Plaintiff VForce seeks to amend the Cross-

18    Complaint and Third-Party Complaint to include additional facts and claims against Cross-

19    Defendant CorTech and the Third-Party Defendants based on recently discovered facts supporting

20    these new claims that arise out of the same transaction and/or occurrence as the original claims.

21    VForce additionally seeks to join eight of the ten current Third-Party Defendants as Cross-

22    Defendants pursuant to Rule 20.  (ECF No. 51.)  CorTech and the eight identified Third-Party

23    Defendants oppose the Motion.[1]  (ECF No. 54.)

24    ///

25    _____

26    [1]     VForce seeks to join Third-Party Defendants Bean Team, Accuire, CapServ, KaiserKane,
      DiManno, Gardner, Musgrove, and Oglesby (and not Hybrid or Forbes) as Cross-Defendants in
27    its First Amended Cross-Complaint and Third-Party Complaint.  For purposes of discussion
      regarding this motion only, these eight Third-Party Defendants will be referred to collectively as
28    the Third-Party Defendants.

1

> A.    Standards of Law

2

> > i.  *Amendment Under Federal Rules of Civil Procedure 15 and 16*

3    Granting or denying leave to amend a complaint rests within the sound discretion of the

4 trial court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  When a court issues a pretrial scheduling

5 order that establishes a timetable to amend the complaint, Rule 16 governs any amendments to

6 the complaint.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).  To allow for

7 amendment under Rule 16, a plaintiff must show good cause for not having amended the

8 complaint before the time specified in the pretrial scheduling order.  *Id.*  This standard "primarily

9 considers the diligence of the party seeking the amendment."  *Johnson*, 975 F.2d at 609.

10 Although the existence or degree of prejudice to the party opposing the modification might

11 supply additional reasons to deny a motion, the focus of the inquiry is on the reasons why the

12 moving party seeks to modify the complaint.  *Id.*  If that party was not diligent, the inquiry should

13 end.  *Id.*  Ultimately, a district court has "broad discretion" to alter the schedule.  *United States v.*

14 *Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985).

15    If good cause exists, the moving party must next demonstrate that the proposed

16 amendment is permissible under Rule 15.  *Johnson*, 975 F.2d at 608 (citing *Forstmann v. Culp*,

17 114 F.R.D. 83, 85 (M.D.N.C. 1987).  Under Rule 15(a)(2), a party may amend its pleading only

18 with the opposing party's written consent or the Court's leave.  However, "[t]he court should

19 freely give leave [to amend] when justice so requires," bearing in mind "the underlying purpose

20 of Rule 15 ... [is] to facilitate decision on the merits, rather than on the pleadings or

21 technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  Whether leave to

22 amend should be granted is generally determined by considering the following factors: (1) undue

23 delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure

24 deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by

25 allowing amendment; and (5) futility of amendment.  *See Foman*, 371 U.S. at 182; *Allen v. City of*

26 *Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).  Of these considerations, "it is the consideration

27 of prejudice to the opposing party that carries the greatest weight."  *Eminence Capital, LLC v.*

28 *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).  "Absent prejudice, or a strong

6

1   showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in

2   favor of granting leave to amend." *Id.* (emphasis in original).  A proposed amendment is futile

3   "only if no set of facts can be proved under the amendment to the pleadings that would constitute

4   a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.

5   1988); *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).  However, denial

6   of leave to amend on this ground is rare.  *See Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534,

7   539 (N.D. Cal. 2003).  Ordinarily, "courts will defer consideration of challenges to the merits of a

8   proposed amended pleading until after leave to amend is granted and the amended pleading is

9   filed." *Id.*

10                      *ii.  Permissive Joinder Under Federal Rule of Civil Procedure 20*

11            Permissive joinder is to be liberally construed in order to promote trial convenience and to

12   expedite the final determination of disputes, thereby preventing multiple lawsuits.  *Cuprite Mine*

13   *Partners LLC v. Anderson*, 809 F.3d 548, 552 (9th Cir. 2015).  The purpose of Rule 20(a) is to

14   address the "broadest possible scope of action consistent with fairness to the parties; joinder of

15   claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383

16   U.S. 715, 724 (1966).

17            Under Rule 20, joinder of defendants is proper if: "(A) any right to relief is asserted

18   against them jointly, severally, or in the alternative with respect to or arising out of the same

19   transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or

20   fact common to all the defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2); *see League*

21   *to Save Lake Tahoe v. Tahoe Regl. Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977).

22            The first prong, the "same transaction" requirement, refers to similarity in the factual

23   background of a claim.  *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  Courts assess

24   the facts of each case individually to determine whether joinder is sensible in light of the

25   underlying policies of permissive party joinder.  *See id.*  Although there might be different

26   occurrences, where the claims involve enough related operative facts, joinder in a single case may

27   be appropriate.  Accordingly, all "logically related" events entitling a person to institute a legal

28   action against another generally are regarded as comprising a transaction or occurrence.  *See*

7

1 | *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (citing 7 C. WRIGHT,

2 | FEDERAL PRACTICE AND PROCEDURE § 1653 at 270 (1972)).

3 |       The second prong of the joinder test addresses commonality.  Commonality under Rule

4 | 20(a)(1)(B) is not a particularly stringent test.  *See Robinson v. Geithner*, No. 1:05-cv-01258-

5 | LJO-SKO, 2011 WL 66158, at *5 (E.D. Cal. Jan. 10, 2011).  The Rule requires only a single

6 | common question, not multiple common questions.  *See* Fed. R. Civ. P. 20.  Further, the common

7 | question may be one of fact or of law and need not be the most important or predominant issue in

8 | the litigation.  *See Mosley*, 497 F.2d at 1333.

9 |       Finally, once the first two requirements are met, a district court must examine whether

10 | permissive joinder would "comport with the principles of fundamental fairness …."  *Coleman*,

11 | 232 F.3d at 1296.  This may include consideration of factors such as the possible prejudice that

12 | may result to any of the parties in the litigation, the delay of the moving party in seeking an

13 | amendment to his pleadings, the motive that the moving party has in seeking such amendment,

14 | the closeness of the relationship between the new and the old parties, the effect of an amendment

15 | on the court's jurisdiction, and the new party's notice of the pending action.  *Desert Empire Bank*

16 | *v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir. 1980).

17 |               B.    <u>Analysis</u>

18 |               *i.  Motion to Amend*

19 |       VForce argues leave to amend is proper because the pleadings are not yet settled

20 | (CorTech and the Third-Party Defendants' Motions to Dismiss are still pending) and therefore

21 | there has been no undue delay and no prejudice to any of the parties.  (ECF No. 51-1 at 4.)

22 | VForce further argues amendment promotes judicial economy because it will permit VForce to

23 | avoid pursuing its additional claims against CorTech and the Third-Party Defendants in a separate

24 | state court action and therefore will prevent a multiplicity of lawsuits.  (*Id.*)  The only apparent

25 | basis for CorTech and the Third-Party Defendants' Opposition is that VForce "unduly delayed" in

26 | bringing the motion until six months after filing its initial Cross-Complaint/Third-Party

27 | Complaint and should have asserted the proposed additional facts and claims in its original Cross-

28 | Complaint/Third-Party Complaint.  (ECF No. 54 at 2, 4–5.)

1    As an initial matter, the Court notes it issued an Initial Pretrial Scheduling Order on July

2    30, 2018, establishing a deadline for joinder of parties and amendments to pleadings.  (ECF No. 5

3    at 2.)  Consequently, VForce's motion is governed by the requirements set forth under Rule 16,

4    and VForce is required to establish "good cause" exists to modify the Scheduling Order before it

5    may seek leave to amend under Rule 15.  *Johnson*, 975 F.2d at 608.  However, VForce did *not*

6    specifically request that the Court modify its Scheduling Order; it merely moved to amend the

7    Cross-Complaint/Third-Party Complaint.  (ECF No. 50.)  For this reason alone, Ninth Circuit

8    case law supports a district court's denial of a motion to amend as untimely.  *See Johnson*, 975

9    F.2d at 608–09 (citing *Jauregui v. City of Glendale,* 852 F.2d 1128, 1133–34 (9th Cir.1988); *U.S.*

10   *Dominator, Inc. v. Factory Ship Robert E. Resoff,* 768 F.2d 1099, 1104 (9th Cir.1985),

11   *superseded by statute on other grounds*, *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir.

12   1996); *Dedge v. Kendrick,* 849 F.2d 1398 (11th Cir.1988).

13   Nevertheless, the Ninth Circuit also indicated a court may treat a motion to amend as a *de*

14   *facto* motion to amend the scheduling order, *Johnson*, 975 F.2d at 608–09, and the Court finds the

15   circumstances of this case warrant doing so here.  Construing the instant motion as one to amend

16   the scheduling order, the Court finds good cause exists to grant VForce leave to amend.

17   First, the Court notes the "Joint Scheduling Report" filed by Plaintiff, Defendants VForce

18   and CorTech, and Third-Party Defendants CapServe, Kaiserkane, DiManno, Gardner, Musgrove,

19   and Oglesby indicates the parties were still evaluating the need for joinder and amendment as of

20   June 12, 2019, and proposed a deadline of November 1, 2019, for joining parties.  (ECF No. 41 at

21   3, 5.)  Thus, in light of the parties' self-imposed deadline, VForce's Motion to Amend and for

22   Permissive Joinder, filed on August 22, 2019, appears timely and demonstrates appropriate

23   diligence in attempting to adhere to the pretrial schedule.  Further, because motions to dismiss the

24   original Cross-Complaint/Third-Party Complaint are still pending, the Court finds the initial

25   pretrial schedule could not reasonably be met despite VForce's diligence.  The Court therefore

26   finds good cause exists to amend the Initial Pretrial Scheduling Order to allow VForce to seek

27   leave to amend its Cross-Complaint/Third-Party Complaint.

28   ///

1    Having established good cause exists under Rule 16, the Court turns to the parties'

2    arguments under Rule 15.  On balance, the Court finds the *Foman* factors support granting leave

3    to amend.  *See Foman*, 371 U.S. at 182.  Here, VForce seeks leave to amend its Cross-

4    Complaint/Third-Party Complaint for the first time, the pleadings are not yet settled as to all

5    parties, discovery has not been completed, and no trial dates have been set by the Court.  By

6    contrast, the cases relied upon in the Opposition are easily distinguishable, as amendment in those

7    cases was sought at a much later stage in the litigation and after several previous attempts to

8    amend.  *See, e.g., Texaco Inc. v. Ponsoldt*, 939 F.2d 794, 798–99 (9th Cir. 1991) (affirming denial

9    of motion to amend due to undue delay where amendment was sought after discovery ended,

10   eight months after summary judgment was granted, and four and a half months before trial);

11   *Allen*, 911 F.2d at 373–74 (affirming denial of leave to file fourth amended complaint where

12   further amendment would be futile).  Further, granting VForce's Motion to Amend, which was

13   filed after the pending Motions to Dismiss and appears to address the deficiencies identified in

14   those Motions, would promote judicial economy rather than cause any undue delay.  For these

15   reasons, the Court also finds the risk of prejudice to the parties, if any, is minimal.  Finally, the

16   Opposition raises no argument that amendment would be futile.[2]  (*See* ECF No. 54); *see also*

17   *Netbula, LLC*, 212 F.R.D. at 539.  Accordingly, VForce's Motion to Amend the Cross-

18   Complaint/Third-Party Complaint is GRANTED.

19                                   *ii.   Motion for Permissive Joinder*

20   By way of the same Motion, VForce additionally seeks to join eight Third-Party

21   Defendants as Cross-Defendants.  More specifically, VForce proposes amended allegations

22   demonstrating CorTech and the Third-Party Defendants conspired to commit certain torts and

23   therefore became jointly and severally liable to VForce for the indemnity obligations owed to

24   VForce by Bean Team, pursuant to the VForce Agreement.  (ECF No. 51-1 at 5.)  VForce argues

25   these claims therefore involve the same transaction, occurrence, or series of transactions and

26   ───────────────

[2]    The Court acknowledges that Third-Party Defendant Forbes filed a motion to dismiss the

27   Cross-Complaint/Third-Party Complaint after the instant motion to amend was fully briefed,
     seeking dismissal on the basis that any amendment to the claim asserted against him would be

28   futile.  The Court will separately address Forbes's motion to dismiss herein.

                                              10

1   occurrences: Bean Team's indemnity obligation to VForce and the issue of which parties became

2   responsible for that obligation after Bean Team was dissolved.  (*Id.* at 6.)  The Third-Party

3   Defendants oppose the joinder on the basis that Plaintiff does not pursue any claims against the

4   Third-Party Defendants and there are no common questions of law or fact between Plaintiff and

5   the Third-Party Defendants.  (ECF No. 54 at 2.)

6        The Court agrees with VForce.  The relevant part of the VForce Agreement concerns the

7   defense and indemnification clause under which Bean Team agreed to indemnify VForce for any

8   additional amounts due to Plaintiff under the Zurich Agreement for the Policy.  Since Plaintiff is

9   suing VForce for the additional amounts due on the Policy pursuant to the Zurich Agreement,

10  VForce's claims for indemnification naturally arise from the same series of transactions.  *See*

11  *Coughlin*, 130 F.3d at 1350.  Similarly, VForce's tort claims relate to wrongful actions

12  purportedly taken by the Cross-Defendant and Third-Party Defendants to avoid these

13  indemnification obligations and are therefore part of the same series of transactions and

14  occurrences.  The determination of whether/which parties are liable for the remaining amounts

15  due on Plaintiff's Policy is also a question of law or fact sufficiently common to all parties,

16  satisfying the second prong of the Rule 20 analysis.  *See Mosley*, 497 F.2d at 1333–34.  The

17  Third-Party Defendants' argument that joinder should be denied because Plaintiff does not pursue

18  any claims against them (ECF No. 54 at 2) is unavailing.  The Third-Party Defendants identify no

19  legal authority in support of such a narrow application of the permissive joinder rule.

20       Finally, for the same reasons that support granting VForce's Motion to Amend, the Court

21  finds the proposed joinder is not prejudicial to any of the parties, but rather promotes judicial

22  efficiency and prevents the risk of conflicting or overlapping judgments.  *Desert Empire Bank*,

23  623 F.2d at 1375; *League to Save Lake Tahoe*, 558 F.2d at 917–18.  Accordingly, the Court

24  GRANTS VForce's Motion for Permissive Joinder as to Third-Party Defendants Bean Team,

25  Accuire, CapServe, Kaiserkane, DiManno, Gardner, Musgrove, and Oglesby.  (ECF No. 51.)

26  ///

27  ///

28  ///

III.   **MOTIONS TO DISMISS THE CROSS-COMPLAINT/THIRD-PARTY COMPLAINT (ECF NOS. 21, 38, 40)**

Cross-Defendants/Third-Party Defendants CorTech, Accuire, CapServ, KaiserKane, DiManno, Gardner, Musgrove, and Oglesby's Motions to Dismiss the Cross-Complaint/Third-Party Complaint (ECF Nos. 21, 38, 40) were filed prior to Defendant/Third-Party Plaintiff VForce's Motion to Amend the Cross-Complaint and Third-Party Complaint, and the arguments raised therein were adequately addressed by the Motion to Amend and proposed amendments (*see* ECF No. 51-2).  Accordingly, the Motions to Dismiss the Cross-Complaint/Third-Party Complaint filed by CorTech, Accuire, CapServ, KaiserKane, DiManno, Gardner, Musgrove, and Oglesby are hereby DENIED as moot.  (ECF Nos. 21, 38, 40.)

IV.   **FORBES'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT (ECF NO. 61)**

Defendant/Third-Party Plaintiff VForce alleges Third-Party Defendant Forbes was VForce and Bean Team's insurance broker who facilitated the purchase of the workers' compensation Policy from Plaintiff Zurich.  VForce asserts one claim against Forbes for equitable indemnity, based on Forbes's purported "wrongful actions" during facilitation of the "purchase from Zurich of the [Policy]."  (ECF No. 15.)  Forbes moves to dismiss on the basis that California law does not permit equitable apportionment of damages for breach of contract claims and Forbes is not jointly and severally liable to Plaintiff.  (ECF No. 61.)

A.   Standard of Law

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

12

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

///

13

1    If a complaint fails to state a plausible claim, "[a] district court should grant leave to

2    amend even if no request to amend the pleading was made, unless it determines that the pleading

3    could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130 (quoting

4    *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d

5    981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when

6    amendment would be futile).

7                    B.    Analysis

8    Forbes argues VForce's claim for equitable indemnity must fail because California law

9    does not permit equitable apportionment of damages for breach of contract claims and the

10   underlying suit in this action is a single cause of action for breach of contract.  (ECF No. 61 at 2,

11   5–7.)  Further, Forbes argues equitable indemnity is only available among tortfeasors who are

12   jointly and severally liable for the plaintiff's injury, which Forbes is not.  (*Id.* at 2, 8–9.)  In

13   opposition, VForce argues Forbes's motion is premised on a "fundamental misunderstanding of

14   the differences between implied contractual indemnity and traditional equitable indemnity under

15   California law," and that VForce's claim against Forbes is viable under implied contractual

16   indemnity principles.  (ECF No. 62 at 3–4.)  The Court disagrees.

17   Equitable indemnity is an equitable doctrine that apportions responsibility among

18   tortfeasors responsible for the same indivisible injury on a comparative fault basis.  *American*

19   *Motorcycle Assn. v. Superior Court*, 20 Cal. 3d 578, 598 (1978).  "[T]he equitable indemnity

20   doctrine originated in the common sense proposition that when two individuals are responsible

21   for a loss, but one of the two is more culpable than the other, it is only fair that the more culpable

22   party should bear a greater share of the loss."  *Id*. at 593.  Historically, the obligation of indemnity

23   took three forms: (1) indemnity expressly provided for by contract (express indemnity); (2)

24   indemnity implied from a contract not specifically mentioning indemnity (implied contractual

25   indemnity); and (3) indemnity arising from the equities of particular circumstances (traditional

26   equitable indemnity).  *Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1157 (2009) (citing *PPG*

27   *Industries, Inc. v. Transamerica Ins. Co*., 20 Cal. 4th 310, 318 (1999).)  Currently, the California

28   Supreme Court recognizes only two basic categories of indemnity: express indemnity and

1    equitable indemnity.  *Prince*, 45 Cal. 4th at 1157.  Implied contractual indemnity is considered "a

2    form of equitable indemnity."  *Id.* (citing *E. L. White, Inc. v. City of Huntington Beach*, 21 Cal. 3d

3    497, 506–07 (1978)).

4           Within the category of equitable indemnity, traditional equitable indemnity and implied

5    contractual indemnity differ to the extent that traditional equitable indemnity is "rooted in

6    principles of equity" and "requires no contractual relationship between an indemnitor and an

7    indemnitee," whereas implied contractual indemnity presupposes a contractual relationship that

8    supports a right to indemnification not rooted in an express contract term.  *See Prince*, 45 Cal. 4th

9    at 1158–59; *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698, 714 (1998); *E. L.

10   White, Inc.*, 21 Cal. 3d at 506–07.  However, both forms of equitable indemnity share a key

11   feature that distinguishes them from express indemnity: unlike express indemnity, neither

12   traditional equitable indemnity nor implied contractual indemnity is available "in the absence of a

13   joint legal obligation to the injured party."  *Prince*, 45 Cal. 4th at 1160–61.  Under this principle,

14   the indemnitee and indemnitor must share liability for the injury.  *See Children's Hospital v.

15   Sedgwick*, 45 Cal. App. 4th 1780, 1787 (1996) ("there can be no indemnity without liability.")

16   Therefore, no indemnity may be obtained from an entity that has no pertinent duty to the injured

17   third party, that is immune from liability, or that has been found not to be responsible for the

18   injury.  *Prince*, 45 Cal. 4th at 1159–61, 1166 n.10, 1168–69; *Children's Hospital*, 45 Cal. App.

19   4th at 1787.

20          VForce's equitable indemnity claim against Forbes — premised on a theory of implied

21   contractual indemnity — fails for two reasons.  First, VForce has not alleged the existence of a

22   contractual relationship between itself and Forbes that would suggest express or implied

23   contractual indemnity is appropriate.  As VForce correctly notes, the right to implied contractual

24   indemnity is predicated on the indemnitor's breach of contract.  *See Bay Dev., Ltd. v. Superior

25   Court*, 50 Cal. 3d 1012, 1029 (1990) (noting an implied contractual indemnity claim is based on

26   "contractual language not specifically dealing with indemnification").  Yet, glaringly absent from

27   ///

28   ///

15

1  VForce's Cross-Complaint/Third-Party Complaint are allegations showing any contractual

2  relationship between VForce and Forbes.[3]  For this reason alone, VForce's claim fails.

3       Second, as Forbes correctly notes, the underlying action is premised on Plaintiff's claim

4  for breach of contract against CorTech and VForce with respect to payments owed on the Policy.

5  (ECF No. 61-1 at 4; ECF No. 6.)  Forbes did not contract with Plaintiff, therefore, Forbes is not

6  jointly and severally liable to Plaintiff for breach of contract.  (*See id.*)  In its Opposition, VForce

7  seems to all-but concede that Forbes is not jointly and severally liable by arguing that implied

8  contractual indemnity claims are distinct from traditional equitable indemnity claims in that they

9  do not require the indemnitor and indemnitee be joint tortfeasors.  (ECF No. 62 at 7–8.)

10  However, this argument is unavailing.  *Prince*, 45 Cal. 4th at 1166 n.10 ("Our reiteration that

11  indemnity is restitutionary in nature and our recognition of a shared liability requirement will

12  avoid transforming a breach of contract claim into a vehicle for the recovery of tort damages.")

13       To that end, VForce's reliance on *West v. Superior Court*, 27 Cal. App. 4th 1625 (1994)

14  for this contention is misplaced.  The Court notes that *West* pre-dates *Prince* and was overruled to

15  the extent it conflicts with *Prince's* holding that "implied contractual indemnity has always been

16  subject to the rule that 'there can be no indemnity without liability.'"  *Prince*, 45 Cal. 4th at 1165.

17  "Indeed, [the *Prince* court's] recognition that 'a claim for implied contractual indemnity is a form

18  of equitable indemnity subject to the rules governing equitable indemnity claims' . . . corrects any

19  misimpression that joint liability is not a component of such claims."  *Id.* at 1166.  For this reason

20  as well, VForce's claim fails.

21       In its Opposition, VForce requests leave to amend in the event the Court grants Forbes's

22  Motion to Dismiss.  VForce claims it can assert factual allegations demonstrating a contractual

23

24  [3]     In opposition to Forbes's motion, VForce argues its equitable indemnity claim survives under the implied contractual indemnity theory because VForce alleged, "in Paragraphs 27 to 30

25  … that: (1) Forbes acted under an agreement to represent VForce as its insurance agent; (2)

26  Forbes performed his duties negligently; and (3) such conduct caused any liability that VForce may owe to Zurich in this case."  (ECF No. 62 at 5.)  However, absolutely none of this language

27  appears in the Cross-Complaint/Third-Party Complaint (or the proposed Amended Cross-Complaint/Third-Party Complaint) and VForce's egregious misrepresentation to this Court is not

28  well-taken.

1   relationship between VForce and Forbes that affects liability to Plaintiff in this case.  (ECF No.

2   62 at 9.)  Notably, VForce's proposed First Amended Cross-Complaint/Third-Party Complaint is

3   similarly devoid of allegations relating to a contract with Forbes.  (*See* ECF No. 51-2 at ¶¶ 9, 19,

4   22, 27, 45.)  Moreover, it is not clear from VForce's allegations whether Forbes purportedly

5   facilitated the initial Zurich Agreement, the subsequent VForce Agreement, or both.  Nor is it

6   immediately clear to the Court that VForce's claim against Forbes has accrued.  *See Southern*

7   *Pacific Transportation Co. v. Ohbayashi America Corp*., 147 Cal. App. 3d 233, 238–39 (1983)

8   (claims for equitable indemnity and implied contractual indemnity accrue "at the time the

9   indemnity claimant suffers loss or damage—that is, at the time of payment of the underlying

10  claim. [Citations.]").  Nonetheless, because the Court cannot determine at this stage that

11  VForce's proposed amendments "could not possibly cure" the identified defects, in an abundance

12  of caution, and because VForce has not yet had an opportunity to amend its Cross-

13  Complaint/Third-Party Complaint, the Court will grant VForce leave to file an Amended Cross-

14  Complaint/Third-Party Complaint.  *Lopez*, 203 F.3d at 1130.  Accordingly, Forbes's Motion to

15  Dismiss the Third-Party Complaint is GRANTED with leave to amend.  (ECF No. 61.)

16          **V.      MOTION TO WITHDRAW**

17          Attorney Barnwell seeks to withdraw as counsel for Third-Party Defendants Bean Team,

18  CapServ, Kaiserkane, DeManno, Gardner, Musgrove, and Oglesby.[4]  (ECF No. 48.)  His Motion

19  is unopposed.  As an initial matter, it seems a substitution of attorney would have been sufficient

20  in this instance to replace Mr. Barnwell with Mr. Hicks[5] for all affected parties, except that a

21  single party was unreachable and therefore did not consent as to the form of the filing.  Indeed,

22  Barnwell indicates the clients voluntarily terminated him and agreed to have Hicks represent them

23  in this matter.  A motion to withdraw is only necessary where the clients will be left to proceed

24  _____

25  [4]      Barnwell's Motion seeks leave to withdraw as counsel for each of the Third-Party
    Defendants he represents, except Accuire.  For purposes of this Motion only, the seven identified
26  Third-Party Defendants will be collectively referred to as the "Third-Party Defendants."

27  [5]      Barnwell identifies Nathan W. Hicks, counsel for Defendant/Cross-Defendant CorTech in
    this action, as the alternative counsel that will represent the Third-Party Defendants if Barnwell's
28  Motion to Withdraw is granted.  (ECF No. 48 at 7.)

*pro se*.  Nonetheless, because a substitution of attorney was apparently not workable, and because

Barnwell has met the requirements for withdrawal, the Court will address the Motion as such.

A.    Standard of Law

In the Eastern District of California, attorneys representing parties to a civil case are

subject to this Court's Local Rule 182(d) which provides:

> Unless otherwise provided herein, an attorney who has appeared may not withdraw leaving the client in propria persona without leave of court upon noticed motion and notice to the client and all other parties who have appeared. The attorney shall provide an affidavit stating the current or last known address or addresses of the client and the efforts made to notify the client of the motion to withdraw. Withdrawal as attorney is governed by the Rules of Professional Conduct of the State Bar of California, and the attorney shall conform to the requirements of those Rules. The authority and duty of the attorney of record shall continue until relieved by order of the Court issued hereunder. Leave to withdraw may be granted subject to such appropriate conditions as the Court deems fit.

L.R. 182(d).

Under the California Rules of Professional Conduct, an attorney may not withdraw unless

he "has taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the

client, including giving due notice to the client, allowing time for employment of other counsel,

complying with rule 3-700(D), and complying with applicable laws and rules."  Cal. R. Prof.

Conduct 3-700(A)(2); *see also CE Res., Inc. v. Magellan Group, LLC*, No. 2:08-cv-02999-MCE-

KJM, 2009 WL 3367489, at *1 (E.D. Cal. Oct. 14, 2009); *McClintic v. U.S. Postal Serv.*, No.

1:13-cv-00439, 2014 WL 51151, at *2 (E.D. Cal. Jan. 7, 2014).

When considering a motion to withdraw as counsel, the Court will weigh four factors: (1)

the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants;

(3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which

withdrawal will delay resolution of the case.  *See e.g.*, *CE Res., Inc.*, 2009 WL 3367489, at *2

(collecting cases).  Ultimately, the Court's ruling must involve a balancing of the equities.  The

decision to grant or deny a motion to withdraw is within the Court's discretion.  *See United States

v. Carter*, 560 F.3d 1107, 1113 (9th Cir. 2009); *McNally v. Eye Dog Found. for the Blind, Inc.*,

No. 1:09-cv-01174-AWI-SKO, 2011 WL 1087117, at *1 (E.D. Cal. Mar. 24, 2011).

18

B.    Analysis

First, the Court finds Barnwell has complied with the applicable California Rules of Professional Conduct in seeking to withdraw as counsel for the Third-Party Defendants. Specifically, the Third-Party Defendants were "notified" of Barnwell's proposed withdrawal as counsel when they voluntarily terminated his representation and indicated their intent to retain other counsel.  (ECF No. 48 at 4, 6.)

For the same reason, the Court finds that on balance, the relevant factors for consideration favor withdrawal.  First, the proposed withdrawal will not cause any prejudice to the Third-Party Defendants because they willingly terminated Barnwell's representation and retained another attorney.  (*Id.* at 4, 6–7.)  Further, the prospective new attorney already represents other Defendants in this case and should therefore not require any additional time to adjust to the absence of Barnwell as counsel.  (*Id.*)  Therefore, the Court finds the proposed withdrawal will cause neither prejudice to the other parties nor "unreasonable delay" in this case.  Similarly, the proposed withdrawal also poses hardly any risk of harming the administration of justice.  In sum, the Court finds Barnwell has sufficiently established good cause to withdraw from representation of the Third-Party Defendants.  Therefore, the Motion to Withdraw is hereby GRANTED.  (ECF No. 48.)

VI.    CONCLUSION

For the foregoing reasons, the Court GRANTS VForce's Motion to Amend and for Permissive Joinder.  (ECF No. 51.)  Third-Party Defendants Bean Team, Accuire, CapServ, KaiserKane, DiManno, Gardner, Musgrove, and Oglesby are hereby joined as Cross-Defendants pursuant to Federal Rule of Civil Procedure 20.  Cross-Defendants/Third-Party Defendants CorTech, Accuire, CapServ, KaiserKane, DiManno, Gardner, Musgrove, and Oglesby's Motions to Dismiss the Cross-Complaint/Third-Party Complaint are DENIED as moot.  (ECF Nos. 21, 38, 40.)  Third-Party Defendant Forbes's Motion to Dismiss the Third-Party Complaint is GRANTED with leave to amend.  (ECF No. 61.)

Finally, Barnwell Law Group, P.C.'s Motion to Withdraw as counsel for the Third-Party Defendants is GRANTED.  (ECF No. 48.)  Barnwell is hereby withdrawn as counsel for Bean

1  Team, CapServ, Kaiserkane, DeManno, Gardner, Musgrove, and Oglesby.  The aforementioned

2  Cross-Defendants/Third-Party Defendants are ordered to file a Notice of Substitution of Counsel

3  — or, if such a substitution is not possible — file a status report not more than 20 days from the

4  date of electronic filing of this Order.

5       VForce is directed to file a First Amended Cross-Complaint and Third-Party Complaint,

6  consistent with this Court's rulings on the Motion to Amend and for Permissive Joinder and

7  Forbes's Motion to Dismiss, not more than 20 days from the electronic filing of this Order.

8  Cross-Defendants and Third-Party Defendants shall file a response to the First Amended Cross-

9  Complaint and Third-Party Complaint within 21 days of the electronic filing of the First

10  Amended Cross-Complaint and Third-Party Complaint.

11       IT IS SO ORDERED.

12  DATED:  May 26, 2020

13

14

15                                  Troy L. Nunley
                                    United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27

28