UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS,<br><br>Plaintiff,<br><br>v.<br><br>VFORCE INC.; CORTECH, LLC; and Does 1 to 100, inclusive,<br><br>Defendants. | No. 2:18-cv-02066-TLN-CKD<br><br>**ORDER** |
| VFORCE INC.,<br><br>Cross-Claimant,<br><br>v.<br><br>CORTECH, LLC; BEAN TEAM NETWORK 2 LLC; ACCUIRE, LLC; CAPSERV, INC.; KAISERKANE CONSULTING, LLC; MICHAEL DIMANNO; RICHARD GARDNER; CHARLES MUSGROVE; and MELISSA OGLESBY,<br><br>Cross-Defendants. | |

///

1

VFORCE INC.,

            Third-Party Plaintiff,

    v.

BEAN TEAM NETWORK 2 LLC; ACCUIRE, LLC; CAPSERV, INC.; KAISERKANE CONSULTING, LLC; MICHAEL DiMANNO; RICHARD GARDNER; CHARLES MUSGROVE; MELISSA OGLESBY, and Roes 1 through 30 inclusive,

            Third-Party Defendants.

This matter is before the Court on Defendant/Cross-Claimant/Third-Party Plaintiff VForce Inc.'s ("VForce") Motion to Disqualify Counsel. (ECF No. 74.) Cross-Defendant CorTech, LLC ("CorTech") and Cross-Defendant/Third-Party Defendant Accuire, LLC ("Accuire") (collectively, "Cross-Defendants"), both represented by attorney Nathan Hicks ("Hicks"), opposed the Motion. (ECF No. 75.) VForce replied. (ECF No. 78.) For the reasons discussed herein, the Court GRANTS VForce's Motion to Disqualify.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. Breach of Contract Action

Plaintiff Zurich American Insurance Company of Illinois ("Plaintiff") initiated this action against Defendants VForce and CorTech (collectively, "Defendants") on July 28, 2018, asserting a single claim for breach of contract. (ECF No. 1.) The operative First Amended Complaint ("FAC") alleges Plaintiff entered into an agreement to issue a workers' compensation insurance policy ("Policy") to Defendants (the "Zurich Agreement"). (ECF No. 6 at 3.) Defendants later failed to make payments on the Policy and allegedly breached the Zurich Agreement. (*Id.*)

On March 11, 2019, Hicks filed an answer to the FAC on VForce's behalf. (ECF No. 12.) On March 12, 2019, attorney Sean Stowers ("Stowers") also filed an answer to the FAC on VForce's behalf. (ECF No. 14.) That same day, Stowers filed a Crossclaim/Third-Party

Case 2:18-cv-02066-TLN-CKD   Document 95   Filed 03/30/21   Page 3 of 16

1  Complaint on behalf of VForce against CorTech and ten other Third-Party Defendants. (ECF No.
2  15.)
3        On June 15, 2020, VForce filed the operative First Amended Crossclaim/Third Party
4  Complaint ("FACC/3PC") against Bean Team Network 2, LLC ("Bean Team") and the other
5  Cross-Defendants, all of whom VForce contends are jointly and severally liable for Bean Team's
6  obligations to VForce through an agency/successor-in-interest relationship with Bean Team.
7  (ECF No. 68.)
8        As relevant to the instant Motion, VForce alleges that, in December 2013, Michael
9  DiManno ("DiManno") (a shareholder in VForce at the time) arranged for VForce and Bean
10 Team (both staffing businesses) to enter into a Labor Services Agreement ("LSA"). (*Id.* at 5.)
11 Under the LSA, Bean Team would refer potential staffing hires for its California clients to
12 VForce, which would hire the workers (allowing them to become covered by VForce's California
13 workers' compensation insurance), and then deploy the workers as Bean Team employees to
14 Bean Team's California clients. (*Id.*) VForce asserts it was represented by Hicks at this time in a
15 number of transactions, including the negotiation and execution of the LSA. (ECF No. 74-1 at 3.)
16       In December 2014, VForce was in jeopardy of losing its California workers'
17 compensation insurance and therefore breaching the LSA with Bean Team. (*See* ECF No. 68 at
18 5.) Plaintiff's Policy was the only available alternative for VForce, but VForce could not afford
19 the Policy. (*Id.* at 5–6). These circumstances led VForce and Bean Team to purchase the Policy
20 together by entering into a contract dated December 22, 2014 (the "VForce Agreement"). (*Id.* at
21 6.) Under the VForce Agreement, VForce agreed to purchase Bean Team's 100% interest in
22 Accuire and Bean Team agreed to pay the Policy premiums that VForce could not, and to defend
23 and indemnify VForce from any liability caused by Bean Team. (*Id.* at 6–9.) Hicks allegedly
24 completed substantial work related to the VForce Agreement as well. (ECF No. 74-1 at 3.)
25       In December 2015, VForce declined to renew the Policy and it was terminated. (ECF No.
26 68 at 7.) In July 2016, Plaintiff completed an audit of the Policy and billed Defendants for
27 $612,669. (*See id.* at 7–8; ECF No. 6 at 3.) This outstanding premium was never paid by anyone,
28 resulting in Plaintiff's initiation of the instant breach of contract action against Defendants. (*See*

3

1  *id.*; *see also* ECF No. 1.)  In turn, VForce asserted contractual and indemnity cross-claims against
2  Bean Team and the other Cross-Defendants, on the basis that Bean Team is responsible for the
3  outstanding payments on the Policy pursuant to the terms of the VForce Agreement.  (*See*
4  *generally* ECF No. 68.)  VForce further contends that Hicks extensively advised it on the drafting
5  of an Asset Exchange for Ownership Agreement executed between VForce and Bean Team,
6  which VForce argues is closely related to the reason Plaintiff audited the Policy and initiated the
7  instant litigation.  (ECF No. 74-1 at 3–4.)
8  On July 2, 2020, VForce filed the instant Motion to Disqualify Hicks from representing
9  Cross-Defendants, on the basis that Hicks's involvement in the drafting and negotiating of the
10 LSA and VForce Agreement on behalf of VForce constitutes an untenable conflict of interest.
11 (ECF No. 74.)

        B.     <u>Hicks's Representation</u>

13 VForce asserts Hicks currently represents CorTech and all eight Cross-Defendants/Third-
14 Party Defendants — Bean Team; Accuire; CapServ Inc. ("CapServ"); Kaiserkane Consulting,
15 LLC ("Kaiserkane"); DiManno; Richard Gardner ("Gardner"); Charles Musgrove ("Musgrove");
16 and Melissa Oglesby ("Oglesby") (collectively, the "Cross-Defendants/Third-Party Defendants")
17 — and seeks to disqualify Hicks from representing each of them.  (*See* ECF No. 74 at 2.)  Hicks
18 disputes the statement that he represents all of the Cross-Defendants/Third-Party Defendants (*see*
19 ECF No. 75 at 3 n.1) but does not expressly identify which parties he currently represents.
20 A review of the case reveals attorney Cory Barnwell represented the eight Cross-
21 Defendants/Third-Party Defendants until the Court granted his motion to withdraw as counsel
22 from all parties (except Accuire) on May 26, 2020.  (ECF No. 48; ECF No. 67 at 17 n.4.)  The
23 Court granted the motion based on Barnwell's sworn statement that the aforementioned parties
24 (except for DiManno) consented to the withdrawal and agreed to be represented by Hicks.  (ECF
25 No. 48 at 7; ECF No. 67 at 19.)  In granting Barnwell's motion, the Court also ordered the
26 aforementioned parties to file a notice of substitution of counsel or status report (if substitution
27 was not possible) by June 15, 2020.  (*See* ECF No. 86 at 20.)  The parties failed to timely comply
28 ///

4

with the Court's Order and were therefore proceeding *pro se* at the time VForce filed the instant Motion.

On July 23, 2020, Hicks concurrently filed a notice of appearance, opposition to VForce's Motion, and answer to the FACC/3PC (ECF No. 68). (ECF Nos. 75, 76, 77.) The notice of appearance indicates Hicks represents all nine Cross-Defendants. (ECF No. 76.) The answer to the FACC/3PC was also filed on behalf of all nine Cross-Defendants. (ECF No. 77.) The opposition to VForce's Motion, however, appears to be submitted on behalf of CorTech and Accuire only. (*See* ECF No. 75 at 1 (pleading caption).)

Confusingly, on November 11, 2020, Barnwell — not Hicks — filed an opposition to VForce's pending motion to modify the scheduling order and to amend the SACC/3PC (ECF No. 80). (*See* ECF No. 81.) On January 28, 2021, Barnwell filed an unopposed request to withdraw and substitute Hicks as counsel for Accuire, which the Court granted. (ECF Nos. 86–87.) Thus, while representation of CorTech remains somewhat ambiguous, it appears Hicks now represents the eight other Cross-Defendants.

For purposes of the instant Order and pursuant to its inherent power to control its docket, *see Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992), the Court construes Hicks's representation to include all nine Cross-Defendants as identified in the instant Motion and will address the propriety of Hicks's representation as to all Cross-Defendants herein. As such, the Court notes Cross-Defendants/Third-Party Defendants Bean Team, Capserv, Kaiserkane, Gardner, Musgrove, DiManno, and Oglesby have not filed an opposition to VForce's Motion and are therefore deemed to have waived any opposition. VForce's Motion is therefore GRANTED as asserted against the aforementioned Cross-Defendants/Third-Party Defendants.

## II.    STANDARD OF LAW

"The right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers." *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003) (citing *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996)). In deciding motions for disqualification, courts apply the relevant state law. *See In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *see also* E.D. Cal. L.R. 180(e) (adopting California's standards

of professional conduct). California Rule of Professional Conduct ("Rule") 1.7 provides, "[a] lawyer shall not, without informed written consent from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter." Cal. Rule Prof'l Conduct 1.7(a). The Rules also provide, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." *Id.* at Rule 1.9(a). If an attorney violates these rules, a current or former client may move for disqualification. *See Lennar Mare Island, LLC v. Steadfast Ins. Co. (Lennar)*, 105 F. Supp. 3d 1100, 1107 (E.D. Cal. 2015) (citing E.D. Cal. L.R. 110).

"The disqualification of counsel is 'generally disfavored and should only be imposed when absolutely necessary.'" *Koloff v. Metro. Life Ins. Co.*, No. 1:13-cv-02060-LJO-JLT, 2014 WL 2590209, at *3 (E.D. Cal. Jun. 10, 2014) (quoting *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004)). Nevertheless, "the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar. Consequently, the recognizably important right to choose one's counsel must yield to the ethical considerations that embody the moral principles of our judicial process." *Lennar*, 105 F. Supp. 3d at 1108 (internal quotations omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1428 (Ct. App. 1999)). "Disqualification is not a punishment for ethical transgressions, but a protection of the integrity of the judicial process." *Id.* (citing *Cargill Inc. v. Budine*, No. 07-349, 2007 WL 1813762, at *7 (E.D. Cal. Jun. 22, 2007)). In particular, disqualification is employed to protect an attorney's primary duties — "and the client's legitimate expectation" — of confidentiality and loyalty. *See Lennar*, 105 F. Supp. 3d at 1108.

When deciding a motion to disqualify:

> The court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

6

*Allen v. Acad. Games League of Am., Inc.*, 831 F. Supp. 785, 789 (C.D. Cal. 1993) (quoting *In re Lee G.*, 1 Cal. App. 4th 17, 26 (Ct. App. 1991)). "The district court is permitted to resolve disputed factual issues in deciding a motion for disqualification and must make findings supported by substantial evidence." *Visa U.S.A., Inc.*, 241 F. Supp. 2d at 1104 (citing *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Syst., Inc.*, 20 Cal. 4th 1135, 1143 (1999)).

**III.    ANALYSIS**

VForce seeks to disqualify Hicks based on a conflict of interest. California distinguishes between two types of conflict of interest — concurrent conflict, based on Rule 1.7, and successive conflict, based on Rule 1.9. *See Lennar*, 105 F. Supp. 3d at 1108. VForce argues Hicks should be disqualified based on both types of conflicts. (*See* ECF No. 74-1 at 6–9.) The Court will address each purported conflict in turn.

A.    <u>Concurrent Representations Conflict</u>

Representation under Rule 1.7 is permitted "only if . . . the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation . . ." Cal. Rule Prof'l Conduct 1.7(d)(3). In other words, "an impermissible conflict of interest exists when counsel actively represents conflicting interests." *Martinez v. McDonald*, No. 2:11-cv-2351 JAM CKD, 2012 WL 2203061, at *5 (E.D. Cal. June 14, 2012) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). When such a concurrent conflict exists, an attorney will be automatically disqualified. *See Lennar*, 105 F. Supp. 3d at 1109.

VForce argues Hicks concurrently represented VForce and Cross-Defendants in violation of Rule 1.7(d)(3) because he answered the FAC on behalf of VForce. (ECF No. 74-1 at 8; *see also* ECF No. 12 (answer).) At first glance while this appears to raise a concurrent conflict issue, the record does not reflect any concurrent conflict actually exists. In reviewing the facts, it is Stowers who currently represents VForce — not Hicks. Indeed, VForce maintains Hicks's employment with VForce ended in August 2014. (*See id.* at 6; ECF No. 74-2 at 2; *id.* at 26–28 (email chain in which Hicks acknowledges and agrees to sign severance agreement); *see also id.* at 29–32 (unexecuted severance agreement dated August 1, 2014).) VForce additionally concedes Hicks did not concurrently represent VForce and the Cross-Defendants by asserting the

March 11, 2019 answer was filed by Hicks without VForce's authorization.[1] (*See* ECF No. 74-1 at 4.) Moreover, this assertion is supported by the fact that, the very day after Hicks filed the purportedly unauthorized answer, Stowers filed a separate answer on VForce's behalf. (*See* ECF Nos. 12, 14; *see also* ECF No. 74-1 at 4; ECF No. 74-2 at 5 (Nobili declaration, averring that VForce sent a letter to Hicks demanding that he withdraw his filing and rectify the fact that he was inaccurately listed as counsel for VForce, but Hicks never responded).) Finally, it is plain from the docket that all recent filings for VForce have been completed by Stowers. (*See, e.g.,* ECF Nos. 68, 74.) Meanwhile, Hicks has filed responses to the FACC/3PC and instant Motion on behalf of Cross-Defendants (ECF Nos. 75, 77) and has not submitted any filings on behalf of VForce since the initial answer. Absent additional proof that Hicks "actively represents" VForce, VForce fails to establish a concurrent conflict exists. *See Martinez*, 2012 WL 2203061 at *5. Thus, disqualification under Rule 1.7(d)(3) is unwarranted.

### B.     Successive Representations Conflict

When determining whether a successive conflict exists, "the governing test requires that the client demonstrate a 'substantial relationship' between the subjects of the antecedent and current representations." *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994). This "substantial relationship" test balances "the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other." *Id.*

Evaluation of the substantial relationship test "turns on two variables: (1) the relationship between the legal problem involved in the former representation and the legal problem involved in the current representation, and (2) the relationship between the attorney and the former client with respect to the legal problem involved in the former representation." *Jessen v. Hartford Cas.*

///

---

[1] The Court finds it troubling that neither party provides much of an explanation as to why Hicks purported to represent VForce by filing an answer on its behalf in March 2019, despite apparently ending his employment with VForce in 2014. Nevertheless, on balance the Court is persuaded by the extensive documentation submitted by VForce that disqualification is warranted, as further discussed herein.

*Ins. Co.*, 111 Cal. App. 4th 698, 709 (2003). The California Supreme Court emphasized the significance of the second variable:

> To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation. If the former representation involved such a direct relationship with the client, the former client need not prove that the attorney possesses actual confidential information. Instead, the attorney is presumed to possess confidential information if the subject of the prior representation put the attorney in a position in which confidences material to the current representation would normally have been imparted to counsel.

*City & Cnty. of San Francisco v. Cobra Sols., Inc. (Cobra Sols.)*, 38 Cal. 4th 839, 847 (2006) (internal citations omitted); *see also Jessen*, 111 Cal. App. 4th at 709–10.

Applying the substantial relationship test, the Court will first address the relationship between Hicks and VForce, and then turn to the relationship between the legal problems involved in the former and current representations.

        *i.*  *Relationship Between Hicks and VForce*

Although not required, some courts analyze the relationship between an attorney and former client by reviewing "(1) the nature and extent of counsel's involvement; (2) the time counsel spent on the prior matter; (3) the type of work performed; and (4) the potential that counsel was exposed to formulations of policy or strategy." *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal. App. 3d 1445, 1454–55 (1991). By these measures, Cross-Defendants argue Hicks's involvement was minimal because Hicks "spent a grand total of approximately 8 hours on legal work for VForce, after early 2014 did not assist VForce and is not alleged to have been privy to VForce's legal or business plans, policies or strategies." (ECF No. 75-1 at 10.) Although the declarations of Hicks, DiManno and Mani Kontokanis ("Kontokanis"), another principal of VForce, appear to support this argument, for the reasons stated herein, VForce's substantial evidence illustrates Hicks's involvement was not minimal and his potential exposure to VForce's plans, policies, and strategies was high. As a result, the Court finds Hicks "had a

///

1  direct professional relationship" with VForce in which Hicks "personally provided legal advice
2  and services" to VForce. *See Cobra Sols.*, 38 Cal. 4th at 847.

3  The parties dispute whether Hicks was VForce's general counsel from 2013 to 2014. (*See*
4  ECF Nos. 74-1, 75.) In support of its position, VForce submits an email exchange between Hicks
5  and VForce discussing Hicks's potential compensation package for employment at VForce (ECF
6  No. 74-2 at 15–16), an unsigned employment agreement between Hicks and VForce (*id.* at 8), the
7  Declaration of Mark Nobili ("Nobili"), owner and principal of VForce, confirming Hicks was
8  VForce's general counsel (*id.* at 1–2), and an email exchange between Hicks and VForce in
9  which Hicks requests business cards stating his name and position as VForce's general counsel
10 (*id.* at 24). In opposition, Hicks does not explicitly deny serving as general counsel for VForce
11 (*see* ECF No. 75-1 at 1), but argues neither an executed employment agreement exists, nor did the
12 email exchange regarding potential compensation result in any finalized agreement. (ECF No. 75
13 at 4–5.) In his own declaration, Hicks states he was not compensated as VForce's general
14 counsel (ECF No. 75-1 at 3), and DiManno avers that VForce generally had little legal work for
15 Hicks to perform (ECF No. 75-2 at 2). In the limited excerpt of the Kontokanis deposition
16 transcript provided by Cross-Defendants, Kontokanis also states he cannot recall any legal work
17 Hicks performed for VForce.[2] (ECF No. 75-1 at 10.)

18 Based on the record presently before it, the Court cannot conclude Hicks served as
19 VForce's general counsel. The emails submitted by VForce and the unexecuted employment
20 agreement show VForce and Hicks engaged in extensive negotiations concerning Hicks's official
21 title and position as "General Counsel," but they fall short of establishing an employment

---

[2] However, the transcript additionally reveals an email exchange between Hicks, Kontokanis, and DiManno in December 2013 regarding ongoing negotiations of terms of employment for Hicks (in which Hicks contends he should be an owner of VForce) (*see* ECF No. 75-1 at 10–11), as well as a business transaction facilitated by DiManno that may pertain to the LSA referenced in the FACC/3PC. (*See id.*; ECF No. 68 at 5.) At a minimum, Hicks's inclusion on this email thread suggests he was privy, to some degree, to VForce's legal or business plans, policies or strategies. Indeed, in a subsequent deposition, Kontokanis discusses meetings and correspondences Hicks engaged in with the principals of VForce regarding legal issues related to other parties in this case, VForce's business plans, and related legal documents. (*See generally* ECF No. 78-1 (full transcript of January 23, 2020 deposition).)

agreement was reached at the end of these discussions. Although Nobili states Hicks was VForce's general counsel, his colleagues DiManno and Kontokanis contradict Nobili's claim, which at best illustrates Hicks's role within VForce was ambiguous.

Nonetheless, the Court finds VForce has submitted substantial evidence showing Hicks indeed played a role within VForce, albeit not with the official title of "General Counsel," such that Hicks had a "direct professional relationship" with VForce in which he "personally provided legal advice and services on a legal issue that is closely related to" his current representation of Cross-Defendants. *See Cobra Sols.*, 38 Cal. 4th at 847. For example, Hicks helped VForce draft and negotiate an agreement substantially related to the VForce Agreement currently at issue in the FACC/3PC, the LSA. (*See* ECF 74-1 at 3.) Hicks avers he only provided VForce "a template of a Labor Services Agreement." (ECF No. 75-1 at 3.) However, the evidence submitted by VForce demonstrates Hicks's contributions to the LSA were much more significant and substantive in nature. Importantly, an email exchange involving Hicks and members of VForce and Bean Team shows Hicks played a significant role in the LSA contract negotiations.[3] (*See* ECF 74-2 at 66.) On December 24, 2013, DiManno emailed Hicks and other VForce employees that Bean Force (via Musgrove) was pushing to finalize an agreement. (*Id.*) DiManno emphasized VForce "cannot lose this deal considering our cash flow in January." (*Id.*) In response, Hicks provided a first draft of the LSA and explained, "[i]t should have all of the relevant terms and provisions, so please take a look and if no issues then we can forward to [Musgrove] for his review. I should be able to clean it up over the next 36 hours." (*Id.*) On December 27, 2013, Musgrove and Hicks negotiated specific provisions of the LSA, including an indemnity provision, as well as provisions related to VForce's "control over the employees." (*Id.* at 111–13.) Hicks also provided Musgrove "the Agreement with revisions [Musgrove] requested." (*Id.* at 111.) Furthermore, in the final and executed version of the LSA, Hicks is listed as VForce's representative to whom any notifications regarding the agreement should be sent. (*Id.* at 38–39 ("All notices given under this

---

[3] The emails provided by VForce show Hicks using a VForce email address ("nhicks@vforcestaff.com"), another fact which tends to establish Hicks's direct, professional relationship with VForce. (*See generally* ECF No. 74-2.)

1    Agreement shall be addressed as follows: . . . and in the case of Subcontractor: VForce, Inc.[,]
2    Nate Hicks . . . .").) Thus, even if Hicks did not finalize the LSA, the evidence submitted by
3    VForce indicates Hicks drafted substantial portions of the LSA and participated in and was privy
4    to the negotiations and internal information regarding VForce's motivation for the deal.
5        VForce also argues Hicks was meaningfully involved with the Asset Exchange for
6    Ownership Interest Agreement between VForce and Bean Team dated April 2014 ("Asset
7    Exchange Agreement"). Cross-Defendants claim Hicks "had nothing to do with" the agreement.
8    (ECF No. 75 at 3; *but see id.* at 6 (Hicks "recall[ed] providing DiManno a template for a Letter of
9    Intent ("LOI") for VForce to use for its contemplated deal with Bean Team").) However, the
10   evidence submitted by VForce again contradicts Cross-Defendants' claim. A February 26, 2014
11   email confirms Hicks provided VForce a draft of the Letter of Intent ("LOI") for the Asset
12   Exchange Agreement. (ECF No. 74-2 at 100.) On March 17, 2014, Hicks also provided VForce
13   legal advice regarding the structure of the Asset Exchange Agreement. (*Id.* at 131 ("[W]e
14   [VForce] will likely need to see [Bean Team's] operating agreement and articles of organization
15   in order to make sure this [Asset Exchange Agreement] is being done in line with [Bean Team's]
16   corporate governance.").) On March 23, 2014, Hicks advised DiManno on several points
17   regarding the Asset Exchange Agreement, including how to clean up the agreement, how to
18   handle old agreements that possibly overlapped with the Asset Exchange Agreement, and how
19   much Hicks should receive in reimbursements and compensation when the Asset Exchange
20   Agreement was finalized. (*Id.* at 132–33.) When Hicks inquired about the status of the Asset
21   Exchange Agreement negotiations on April 16, 2014, DiManno indicated the deal had fallen
22   apart. (*Id.* at 137.) After Hicks requested to see the agreement draft, DiManno indicated it
23   contained information too sensitive to circulate via email (*see id.*), but that he would review it
24   with Hicks in person (*see id.* at 135). These emails demonstrate Hicks provided significant legal
25   advice and services to VForce with respect to the Asset Exchange Agreement. They further
26   establish Hicks's role in negotiating two key agreements for VForce and his exposure to VForce's
27   policy formulations, strategies, and underlying motivations for entering the agreements.
28       In light of this evidence, the Court concludes Hicks had a direct professional relationship

with VForce in which he provided legal advice and services to VForce that are related to his current representation of Cross-Defendants. Therefore, it is presumed, and need not be proven, that Hicks possesses confidential information of VForce. *Cobra Sols.*, 38 Cal. 4th at 847; *see also Jessen*, 111 Cal. App. 4th at 709.

> ii. *Relationship Between the Legal Problems Involved in Hicks's Former and Current Representations*

Having established Hicks's direct relationship with VForce, the Court now turns to whether the legal issues in Hicks's past representation of VForce are substantially related to the legal issues involved in his current representation of Cross-Defendants. *Cobra Sols.*, 38 Cal. at 847. As previously established, Hicks worked on the LSA and Asset Exchange Agreement for VForce. VForce contends that Hicks's prior representation is substantially related to his current representation of Cross-Defendants because the LSA and Asset Exchange Agreement laid the foundation for the VForce Agreement, which is "one of the most important document[s] in this case and the origin of VForce's claims for indemnity and breach of contract." (ECF No. 74-1 at 7.) Cross-Defendants argue Hicks's work for VForce has "nothing to do with whether VForce breached its contractual duties to Zurich in this lawsuit" and that it "did not imbue Hicks with any 'material' information" because his work product merely consisted of drafts and templates. (ECF No. 75 at 8–9.) The Court finds VForce has the better argument.

The *Jessen* court provided that successive representations are substantially related when "the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Jessen*, 111 Cal. App. 4th at 713; *see also Foster Poultry Farms v. Conagra Foods Refrigerated Foods Co., Inc.*, No. F 04-5810 AWI LJO, 2005 WL 2319186, at *5 (E.D. Cal. Sept. 22, 2005) (evaluation of relationship must be "wide ranging and flexible"). "Material" means "the information acquired during the first representation . . . must be found to be directly at issue in, or have some critical importance to, the second representation." *Fremont Indem. Co. v. Fremont Gen. Corp.*

13

*(Fremont)*, 143 Cal. App. 4th 50, 69 (2006) (citations omitted).  Cross-Defendants' arguments regarding both the LSA and the Asset Exchange Agreement fall short under these considerations.

VForce, and specifically Hicks on VForce's behalf, negotiated information pertaining to indemnification that was directly at issue in the LSA.  (ECF No. 74-2 at 111–13.)  Furthermore, VForce's "control over the workers" and workers' compensation matters were important enough to the LSA that they were included in the executed version of the contract.  (*Id.*; *see also id.* at 36–37, 44.)  Similarly, the main issues of the FACC/3PC involve indemnification and workers' compensation in the VForce Agreement, and these in turn affect Plaintiff's claims against VForce.  (*See* ECF No. 68.)  Therefore, the Court can rationally conclude information pertaining to indemnification and workers' compensation policies and preferences between VForce and Bean Team was material to the LSA, and such information is also material to settling the contractual issues regarding indemnification and workers' compensation raised in the instant litigation.  *See, e.g., W. Sugar Coop. v. Archer Daniels Midland Co.*, 98 F. Supp. 3d 1074, 1086–88 (C.D. Cal. 2015) (attorney's prior legal advice to plaintiffs regarding marketing of high fructose corn syrup was substantially related to the attorney's subsequent representation involving defendants' claims of fraud and false advertising against plaintiffs for its high fructose corn syrup); *Fiduciary Tr. Internat. of Cal. v. Superior Court*, 218 Cal. App. 4th 465, 474–75, 479–81 (2013) (attorney's prior drafting of plaintiffs' wills was substantially related to the attorney's subsequent representation of defendants in litigation concerning interpretation of plaintiffs' wills).

Additionally, in negotiations over the Asset Exchange Agreement, VForce and Bean Team discussed a transaction by which VForce would acquire a controlling interest in Bean Team, with a right to repurchase.  (ECF No. 74-2 at 126.).  The VForce Agreement closely mirrored this transaction, as it provided for VForce to purchase Accuire, while Bean Team retained (and later exercised) the right to repurchase Accuire.  (ECF No. 68 at 6.)  Nobili also avers the Asset Exchange Agreement involved the conveyance of the business name "VForce Staffing Solutions."  (*See* ECF No. 74-2 at 3.)  VForce argues this conveyance is of particular importance to the instant litigation because it supports a legal defense based on the contention that Plaintiff "confused 'VForce Inc.' and 'VForce Staffing Solutions'" to improperly audit the

Policy. (*Id.*) The Court concludes these transactions, too, were material to the Asset Exchange Agreement and the execution of the VForce Agreement at issue in the instant litigation. *See Fremont*, 143 Cal. App. 4th at 69.

Because the Court can rationally conclude that information material to Hicks's past representation of VForce pertaining to the LSA and Asset Exchange Agreement is also material to Hicks's current representation of Cross-Defendants, Hicks's successive representations are substantially related. *Jessen*, 111 Cal. App. 4th at 713; *Foster Poultry Farms*, 2005 WL 2319186, at *5. Consequently, because a direct professional relationship existed between Hicks and VForce, and because "a substantial relationship between the two representations is established," Hicks "is automatically disqualified from representing" Cross-Defendants. *Cobra Sols.*, 38 Cal. 4th at 847.

### C.   Waiver

Alternatively, Cross-Defendants argue VForce waived its right to disqualify counsel because it delayed bringing this Motion for two years. (ECF No. 75 at 11.) This argument is unpersuasive.

A former client may expressly or impliedly waive his right to disqualify counsel if he knowingly refrains from asserting it promptly. *Trust Corp. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). To establish waiver, however, a party must "demonstrate prima facie evidence of unreasonable delay in bringing the motion causing prejudice to the present client . . ." *W. Cont'l Co. v. Nat. Gas Corp.*, 212 Cal. App. 3d 752, 763 (1989). Moreover, "the delay and the ensuing prejudice must be extreme." *Id.* at 764 (citing *River W., Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1311 (1987)).

Cross-Defendants' argument incorrectly focuses on the age of litigation, not the stage of litigation. *See Ontiveros v. Constable*, 245 Cal. App. 4th 686, 701–02 (2016) (finding delay was not extreme because pleadings were not yet final, discovery was still in progress, and no trial date was set). Here, the litigation is in its nascent stages, as the FACC/3AP was filed on June 15, 2020 (ECF No. 68), and discovery is still open (*see* ECF No. 90). VForce could not have moved to disqualify Hicks two years ago because Hicks did not come to represent Cross-Defendants

until — at earliest — after the Court granted Barnwell's motion to withdraw as counsel on May 26, 2020. (*See* ECF Nos. 48, 67; *see also* ECF No. 78 at 9 (VForce was not made aware of the instant litigation until February 5, 2019, when it was served).) Further, VForce asserts it did not discover a conflict of interest until Nobili's deposition on June 19, 2020. (ECF No. 78-1 at 2.) The filing of the instant Motion less than two weeks later hardly constitutes "extreme delay." Finally, to the extent Cross-Defendants argue they will be prejudiced because they would have to spend substantial time and money "getting new counsel up to speed" (ECF No. 75 at 11), the Court cannot conclude this concern outweighs the "paramount concern" of preserving public trust in the "scrupulous administration of justice and in the integrity of the bar." *Lennar*, 105 F. Supp. 3d at 1108; *see also In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 599 (1991) (loss of knowledgeable counsel and the necessity of seeking new counsel are not forms of prejudice that warrant preventing disqualification of counsel). Therefore, Cross-Defendants' waiver argument fails.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Disqualify Nathan Hicks as Counsel for Cross-Defendant CorTech and Cross-Defendants/Third-Party Defendants Accuire, Bean Team, Capserv, KaiserKane, DiManno, Gardner, Musgrove, and Oglesby. (ECF No. 74.) The aforementioned Cross-Defendant and Cross-Defendants/Third-Party Defendants are hereby ordered to file a notice of substitution of counsel — or, if such a substitution is not possible — file a status report not more than 30 days from the date of electronic filing of this Order.[4]

IT IS SO ORDERED.

DATED: March 29, 2021

Troy L. Nunley
United States District Judge

---

[4]   The parties are additionally reminded that any corporation or entity cannot represent itself *pro se* and must be represented by counsel pursuant to Local Rule 183(a).