UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS,<br><br>        Plaintiff,<br><br>   v.<br><br>VFORCE INC., et al.,<br><br>        Defendants.<br><br>VFORCE INC.,<br><br>        Cross-Claimant and<br>        Third-Party Plaintiff,<br><br>   v.<br><br>CORTECH, LLC, et al.,<br><br>        Cross-Defendant and<br>        Third-Party Defendants. | No. 2:18-cv-02066-DAD-CKD<br><br><u>ORDER DIRECTING PLAINTIFF TO PROVIDE SUPPLEMENTAL EVIDENCE IN SUPPORT OF ITS PENDING MOTION FOR SUMMARY JUDGMENT</u><br><br>(Doc. No. 189) |

This matter is before the court on the motion for summary judgment filed by plaintiff Zurich American Insurance Company of Illinois ("Zurich") on July 8, 2024. (Doc. No. 189.) The pending motion was taken under submission on August 2, 2024. (Doc. No. 202.) For the reasons explained below, the court will order plaintiff to provide supplemental evidence with regard to

1

one limited issue and will defer ruling on plaintiff's pending motion for summary judgment until the court receives that supplemental evidence.

**BACKGROUND**

This case arises from defendant VForce Inc. ("VForce"), a staffing company, allegedly failing to pay the additional insurance premium owed to plaintiff in breach of their workers' compensation insurance contract.

On March 2, 2021, plaintiff filed its first motion for summary judgment, seeking summary judgment in its favor and against defendant VForce on its sole claim for breach of contract.[1] (Doc. No. 92.) On February 5, 2024, the court granted plaintiff's first motion for summary judgment in part. (Doc. No. 182.) Rather than repeat the entire factual and procedural background included in that order, the court incorporates that background section by reference herein.

In the February 5, 2024 order, the court granted partial summary judgment in favor of plaintiff and against VForce as to the first, second, and third elements of its breach of contract claim (i.e., that the workers' compensation insurance policy was a valid contract, Zurich performed under the contract, and VForce breached the contract by failing to pay additional premiums due under the contract). (*Id.*) The court denied plaintiff's motion for partial summary judgment as to the fourth element, the issue of the amount of damages, because plaintiff had "not established that the $612,656.00 amount of additional premium it seeks in damages is an accurate figure, let alone an undisputed amount." (*Id.* at 29.) In particular, the overall accuracy of the audit Zurich used to determine the additional premium owed by VForce was called into doubt due to a few admitted errors in that audit, as summarized in the court's February 5, 2024 order as follows:

> It is undisputed that Zurich's audit of the VForce Policy is not entirely accurate in all respects. In preparation for the filing of the pending motion, Zurich reanalyzed the payroll audit results reflected in the Audit Adjustment of Premium, and determined that there are minor errors in some of the manually input rates of class

---

[1] Plaintiff did not move for summary judgment against defendant Cortech, LLC, the only other defendant named in its operative first amended complaint. (*See* Doc. No. 6 at ¶ 13.)

> codes added by endorsements, and that VForce had actually paid a slightly higher deposit premium than noted. Zurich offers as supporting evidence the affidavit of Mike Berrenson, a field technical director in Zurich's premium audit division, who reviewed the Audit Adjustment of Premium. In his affidavit, Mr. Berrenson states that "[t]he manual input errors regarding class code rates add up to $2,681.00 in additional premium that should have been charged to VForce," but he does not specify which class code rates contained errors or what those errors were in particular. When asked at his deposition if he recalled in this instance what the exact errors were, Mr. Berrenson answered, "No, I do not. I would have no idea." As for the deposit premium that VForce paid, Zurich's records indicate that VForce made payments totaling $1,314,563.00 but was only given credit for $1,314,498.00—a difference of $65.00. The net amount of the errors would add $2,616.00 to the amount of additional premium stated as owed by VForce to Zurich in the Audit Adjustment of Premium. However, as noted above, Zurich is seeking only the (admittedly inaccurate) amount of $612,656.00 in damages.

(Doc. No. 182 at 12) (internal citations omitted).

## DISCUSSION

In connection with its pending second motion for summary judgment, plaintiff asserts as an undisputed fact the following:

> In preparation for this motion, Zurich re-analyzed the purported "manual entry" errors totaling $2,681.00 reported in Zurich's last motion for summary judgment, and determined that those errors were in another Zurich data collection system called CESAR that has nothing [sic] with premium audits and had no impact on the actual audit results yielding a premium owed after payroll audit of $612,656.00.

(ZUF ¶ 17.)[2] In other words, plaintiff clarifies that there were actually no manual input errors in its payroll audit, and $612,656.00 is the correct amount of additional premium due under the Policy. (Doc. No. 189-1 at 2–3, 8–10.) To support this assertion, plaintiff submits as new evidence the affidavit of Julie Miller, Zurich's premium audit technical consultant in the Technical Operations Center ("TOC") with 28 years of experience in auditing at Zurich. (Doc. No. 189-5.) In her affidavit, Ms. Miller provides the following explanation:

---

[2] The relevant facts that are new to the second motion for summary judgment are undisputed unless otherwise noted and are derived from the undisputed facts as stated by plaintiff and responded to by defendant VForce (Doc. No. 195-1 ("ZUF")), as well as the exhibits attached to the affidavits filed by plaintiff in support of its motion (Doc. Nos. 189-3–189-6). Defendant VForce did not file any exhibits or affidavits in support of its opposition to the pending motion.

> In Zurich's previously filed Motion for Summary Judgment there was some confusion on the part of one of my colleagues and [he] erroneously provided information to the Court about purported errors in the calculations of the Total Earned Premium in the audit recap. The information was relayed (but not created) by Mike Berrenson in his affidavit in support of Zurich's Motion. In his Affidavit, Mr. Berrenson repeated information that had been provided to him that the Total Earned Premium was incorrect in VForce's favor in the amount of $2,681.00 due to "manual input errors regarding class code rates." I have reviewed the information provided to Mr. Berrenson and recited in the affidavit. The manual input errors are from a data collection system called "CESAR" which is not used for Premium Audits.
>
> The CESAR system is a statistical information repository. It includes manual input of policy terms and rates. Manual input errors on the CESAR system have no impact on the accuracy of the audit recap because CESAR does not create the audit recap; the Premium Audit system, with the actual electronic policy terms and rates does. Therefore, the manual input errors on the CESAR system discovered by my colleague did not impact the audit results, and there is no error of $2,681.00 in the Total Earned Premium in the audit recap.

(*Id.* at ¶¶ 15, 16.)

In opposing plaintiff's pending motion, defendant does not meaningfully dispute Ms. Miller's affidavit, which explains that the errors previously identified by Mr. Berrenson were errors in a data collection system that is not used in the premium audit process and did not impact the audit results. Rather, defendant contends that plaintiff has presented the court with two diametrically opposed conflicting facts, which cannot be resolved by the court on summary judgment. (Doc. No. 195 at 10.) The court does not agree with defendant's characterization, however, because Ms. Miller's affidavit provides clarification and context as to the errors that Mr. Berrenson had previously identified. Critically, those errors were made in an unrelated system that is not part of the audit. Defendant has not offered any evidence to rebut or contradict Ms. Miller's explanation in this regard. Moreover, when coupled with Mr. Berrenson's deposition testimony that he did not recall the exact errors and "would have no idea" what they were—which the court had emphasized as being a cause for concern with regard to the accuracy of the audit— Ms. Miller's explanation helpfully clarifies the errors Mr. Berrenson referenced and addresses the court's earlier concern that those errors called into question the accuracy of the audit.

/////

4

In addition to addressing those CESAR manual input errors, Ms. Miller has now also declared that she reviewed the Policy and the Audit Adjustment of Premium (referred to as an "audit recap") and "confirmed that the rates, schedules, credits, debits, modifiers, and multipliers (including, but not limited to, schedule debits, increased limits and experience modifications) in the audit recap are the same rates, schedules, credits, debits, modifiers and multipliers that are included in the terms of the [Policy], and also match the [Department of Insurance] and/or the [Workers Compensation Insurance Rating Bureau ("WCIRB")] issued rates, modifications and multipliers." (Doc. No. 189-5 at ¶¶ 10–11.) Ms. Miller further explained that an auditor in the premium audit division "audits an insured's payroll and Workers Compensation classification documents, and the allocation of that payroll to the applicable Class Codes, and inputs that information into the Premium Audit system." (*Id.* at ¶ 8.) But it is the TOC that

> takes the payroll and classification/exposure information from the audits, collected and uploaded into Zurich's audit system by the field auditors, cross-references with the policy terms, including endorsements to the policy, the DOI filed and approved rates, and cross-references with the appliable state bureaus (WCIRB in California), and then applies the rates, schedules, credits, debits, modifiers and multipliers in the policy to the audit data determining the exposure to calculate the additional policy premium owed by the insured to Zurich, or the refund premium owed by Zurich to the insured.

(*Id.* at ¶ 9.) Thus, while defendant argued in opposition to plaintiff's first motion for summary judgment that the audit results could not be trusted in part because the auditors Mr. Hawkins and Mr. Berrenson did not verify class codes and ex mod ratings—and the court shared similar concerns (*see* Doc. No. 182 at 29)—Ms. Miller's affidavit now clarifies that those concerns are unfounded because Mr. Hawkins and Mr. Berrenson were not responsible for those tasks; rather, it is the TOC that undertakes them. Furthermore, as noted above, Ms. Miller, who is in the TOC, confirmed that the audit recap was accurate; she "checked the math/performed the calculations" and "found all calculations for the 'Total Earned Premium' of $1,927,154 listed on the last page of the audit recap is accurate based on [Policy] rates, schedules, credits, debits, modifiers and multipliers multiplied by the audited exposure." (Doc. No. 189-5 at ¶ 13.)

/////

5

Here too, defendant has not offered any evidence to dispute the total earned premium calculation of $1,927,154. By contrast, plaintiff has supported its calculation with evidence of the type courts rely on when granting summary judgment on breach of contract claims like the one brought in this action. *Zurich Am. Ins. Co. v. UGS Priv. Sec., Inc.*, No. 22-cv-1163-GW-EX, 2023 WL 4291811, at *1 (C.D. Cal. Mar. 1, 2023) ("Plaintiffs provided ample evidence documenting the audit itself, i.e., how the audit calculations were performed, where the audit data derived from, and why the audits were reviewed and reperformed."). Defendant focuses instead on its contention that Mr. Mani Kontokanis, VForce's president/CEO and Accuire's owner, did not participate in the audit. (ZUF ¶ 14; Doc. No. 195 7–8.) But defendant's focus in this regard is misplaced because defendant has not shown how Mr. Kontokanis's participation (or lack thereof) is material. Importantly, in addition to the Miller affidavit, plaintiff also filed with the court another affidavit from Mr. Hawkins, who provides additional information regarding the sources of the information he received for the audit—namely, VForce's designated point of contact, Brad Brozaitis. (Doc. No. 189-4 at ¶¶ 12–20.) Notably, defendant does not dispute that Mr. Brozaitis provided VForce's information to Mr. Hawkins for the audit, nor does defendant even attempt to contest the accuracy or thoroughness of the information that was provided to Mr. Hawkins. Further, in his affidavit, Mr. Hawkins has explained that:

> For my purposes as an auditor, it does not matter whether Mr. Kontokanis as President of VForce was directly involved in the audit. In my career, I have performed thousands of Premium Audits. Often I and the staff I now supervise are not dealing with the President of the company when we conduct audits. Instead, it is a bookkeeper, an accountant, a controller, an assistant to a CFO, or an outside agent. When I was a field auditor, I made my first contact with the person designated in the policy documents or communications with Zurich as the point of contact for the audit. In this case that designated contact for VForce was Brad Brozaitis. Rather than the title of the person or people that I am working with at the insured company, what is important to me is that I receive accurate payroll and job classification information needed to conduct the audit.

(Doc. No. 189-4 at ¶ 18.) In short, defendant has simply not established that there is a genuine dispute of material fact with regard to the total earned premium calculation of $1,927,154, from which defendant's deposit premium amount is subtracted to arrive at the amount of additional

6

1    premium due. *See UGS Priv. Sec., Inc.*, 2023 WL 4291811, at *1 (granting summary judgment in
2    favor of the plaintiff insurance company and explaining that the "Defendant does not supply any
3    precise contention or supporting evidence as to what exactly is incorrect with the audits as
4    performed and, therefore, the results," and "[g]iven the Plaintiffs' established assertions and
5    concomitant admissible evidence, the burden falls on Defendant to dispute particular aspects of
6    the audit calculations but it does not do so").

7    However, plaintiff's pending motion for summary judgment is silent as to the other error
8    plaintiff had previously identified: that VForce paid a deposit premium of $1,314,563.00 but was
9    only given credit for $1,314,498.00—a difference of $65.00, which, according to plaintiff, should
10   have been a set-off/credit for VForce against the additional premium owed. (*See* Doc. Nos. 92-1
11   at 9–10; 92-8 at ¶ 11.) In its first motion for summary judgment, because plaintiff was
12   accounting for the $2,681.00 in manual input errors, the $65.00 offset was subtracted from
13   $2,681.00 and plaintiff, at that time, had concluded that technically VForce owed it $2,616.00 on
14   top of the $612,656.00 amount, but it was willing to accept just $612,656.00. (Doc. No. 92-1 at
15   9–10.) Due to its silence on this issue in its second motion for summary judgment, it is unclear to
16   the court whether that previously identified $65.00 error was actually not an error at all (leading
17   $612,656.00 to be the correct amount due), or whether plaintiff simply forgot to account for that
18   $65.00 error in preparing its second motion for summary judgment. Under that latter scenario,
19   VForce's amount due would be subject to a $65.00 setoff, and thus the additional premium
20   amount due would be $612,591.00—not $612,656.00. The additional premium due is arrived at
21   by calculating the difference between the total earned premium and the deposit premium that
22   VForce already paid. As explained above, the court finds that the evidence before the court on
23   summary judgment establishes that $1,927,154 is the total earned premium amount. The only
24   remaining question is whether the correct deposit premium to subtract from that amount is
25   $1,314,498.00 (with no $65.00 error) or $1,314,563.00 (accounting for the $65.00 error). The
26   court recognizes that in dealing with such large sums, a difference of $65.00 is *de minimis*.
27   Nonetheless, to prevail on its second motion for summary judgment, plaintiff bears the burden to
28   establish that there is no genuine dispute of material fact as to the amount of damages.

Rather than deny plaintiff's motion and compound the effect that plaintiff's inattentiveness to detail and apparent oversight with regard to the $65.00 error has had on the court's limited judicial resources, the court will direct plaintiff to provide supplemental evidence on this point.

**CONCLUSION**

Within seven (7) days from the date of this order, plaintiff shall file a supplemental brief with a supporting affidavit(s) to clarify whether there was a $65.00 error in crediting VForce for the premium deposit it paid. To the extent defendant has evidence it wishes to submit regarding the deposit premium amount and the previously identified $65.00 error, defendant may also file a supplemental affidavit for that purpose by the same deadline. To be clear, the court will not entertain any further evidence or argument with regard to the amount of total earned premium or any other aspect of plaintiff's second motion for summary judgment.

IT IS SO ORDERED.

Dated: **September 3, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE