UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS,<br><br>   Plaintiff,<br><br> v.<br><br>VFORCE INC., et al.,<br><br>   Defendants. | No. 2:18-cv-02066-DAD-CKD<br><br><u>ORDER GRANTING DEFENDANT, CROSS-CLAIMANT AND THIRD-PARTY PLAINTIFF VFORCE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u><br><br>(Doc. No. 198) |
| VFORCE INC.,<br><br>   Cross-Claimant and<br>   Third-Party Plaintiff,<br><br> v.<br><br>CORTECH, LLC, et al.,<br><br>   Cross-Defendant and<br>   Third-Party Defendants. | |

  This matter is before the court on the motion for partial summary judgment filed by defendant, cross-claimant, and third-party plaintiff VForce Inc. ("VForce") on July 29, 2024. (Doc. No. 198.) The pending motion was taken under submission on August 2, 2024. (Doc. No. 202.) For the reasons explained below, the court will grant VForce's motion for partial summary judgment.

1

**BACKGROUND**

This case arises from VForce, a staffing company, allegedly failing to pay the additional insurance premiums owed to plaintiff Zurich American Insurance Company of Illinois ("Zurich") in breach of their workers' compensation insurance contract. In its crossclaim and third-party complaint, VForce asserts that a different staffing company with whom it had entered into agreements, third-party defendant Bean Team Network 2 LLC ("BTN2"), along with its members and successors-in-interest who are also named as third-party defendants, is the entity responsible for paying any additional insurance premiums owed to Zurich. (Doc. Nos. 15, 119, 201.)

VForce brings the pending motion for partial summary judgment, seeking a judicial determination that pursuant to a contract entered into by VForce and BTN2 on December 22, 2014: (i) BTN2 "was and is obligated to pay" those additional premiums; (ii) BTN2 breached the agreement by failing to pay such additional premiums; (iii) BTN2 was and is obligated "to defend and indemnify VForce in the present action" brought against VForce by Zurich; and (iv) BTN2 breached the agreement by failing to defend and indemnify VForce after it was sued by Zurich. (Doc. No. 198-1 at 10.) VForce clarifies that its motion does not target the many other named third-party defendants, even though "BTN2 is no longer an active, operational entity," because "a determination of the actual successor in interest to BTN2 with respect to liabilities involves the adjudication of many facts that are in dispute, and thus, is not suited for a motion for summary adjudication."[1] (Doc. No. 198-1 at 7.) Even though "VForce is not seeking a judgment against any named party through the present motion and is only seeking judicial findings," VForce asserts that the court "[m]aking this determination now will greatly improve the effectiveness and efficiency of a subsequent trial by eliminating a foundational issue that underlies" VForce's claims in its operative cross-complaint and third-party complaint. (Doc. No. 198 at 2.)

---

[1] The court notes that despite VForce aiming this motion against third-party defendant BTN2, the opposition to the pending motion was filed on behalf of all but one of the third-party defendants (BTN2; Accuire, LLC; Capserv, Inc.; KaiserKane Consulting, LLC; Michael DiManno; Richard Gardner; Charles Musgrove; and Melissa Oglesby) (collectively, "the third-party defendants"). (Doc. No. 204.) Third-party defendant Employinsure LLC, for whom a summons was not issued until September 3, 2024, is not one of the parties opposing VForce's pending motion. (*See* Doc. No. 210.)

A. **Factual Background**[2]

VForce agreed to purchase a workers' compensation policy from Zurich together with BTN2. (UF ¶ 1.) After being assured of the propriety and legality of such an agreement, VForce entered into an agreement with BTN2 that governed the parties' obligations respecting the joint workers' compensation policy. (UF ¶ 2.) After negotiations primarily between third-party defendant Charles Musgrove ("Musgrove") on behalf of BTN2, and Mark Nobili[3] ("Nobili") on behalf of VForce, the parties entered into an agreement on December 22, 2014 (the "Agreement").[4] (UF ¶ 3.)

While the Agreement covered many different aspects of the relationship between the parties, only certain provisions governed BTN2's obligations to pay all premiums and to defend and indemnify VForce in any action brought by Zurich seeking premiums. (UF ¶ 4.) The Agreement refers to VForce as "VF." (UF ¶ 5.) Section 4(a) of the Agreement provided in pertinent part:

> BTN 2 shall pay the premiums on behalf of VF on the Zurich worker's compensation policy as may be held by VF (the "Policy"). These monthly premium payments currently are approximately Ninety Eight Thousand Dollars and No/100 ($98,000.00.) [sic]  To the extent any such payments exceed the amount of the actual Policy premiums due, such excess amounts shall be returned to BTN 2. Any underpayments on the Policy premiums shall be the responsibility of BTN 2.

/////

---

[2] The relevant facts that follow are undisputed unless otherwise noted and are derived from the undisputed facts as stated by VForce and responded to by the third-party defendants (Doc. No. 204-1 ("UF")), as well as the declarations and attached exhibits filed by the parties in support of their respective briefs (Doc. Nos. 198-3–198-5; 204-2–204-3; 205-1). The court notes that the third-party defendants did not file their own "concise 'Statement of Disputed Facts,' and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication," as permitted by Local Rule 260(b).

[3] In his declaration, Nobili states that at all relevant times, he "was a founding partner, shareholder, and Vice President at VForce." (Doc. No. 198-3 at ¶ 3.)

[4] Although the third-party defendants purport to "deny" this fact, their denial is based on their assertion that the agreement was *also* negotiated by Mani Kontokanis. (UF ¶ 3.) But that assertion does not serve to contradict or dispute VForce's asserted undisputed fact that Musgrove and Nobili *primarily* negotiated the Agreement.

(UF ¶ 6.)   Section 4(d) of the Agreement further distilled BTN2's obligation by stating in pertinent part:  "For the avoidance of doubt, any increased costs (including increases in the Policy premiums) associated therewith shall be the responsibility of BTN 2."  (UF ¶ 7.)  Section 7(a) of the Agreement provided in pertinent part:

> To the fullest extent permitted by law, BTN 2 will defend, indemnify, and hold VF and its members, directors, officers, agents, representatives, and employees harmless from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by BTN 2's breach of this Agreement; its failure to discharge its duties and responsibilities; the negligence, gross negligence, or unlawful acts of BTN 2 or its officers, employees, or authorized agents in the discharge of those duties and responsibilities.

(UF ¶ 9.)   Section 14(j) of the Agreement also contained an integration clause that provided in pertinent part:

> Entire Agreement.   This Agreement contains the entire understanding between and among the parties and supersedes any prior understandings and agreements among them respecting the subject matter of this Agreement.  Each party (and its members) on the one hand represents and warrants that it does not have, and shall not make, any arrangements with the party (or its members) on the other hand for the duration of the Agreement related to the subject matter of this Agreement without written disclosure to all parties (and its members).

(UF ¶ 10.)

Upon termination of the Zurich insurance policy, Zurich performed an audit of the previous year pursuant to "Part Five – Premium, Section G. Audit and the Optional Premium Increase Endorsement – California" of the Policy.  (UF ¶ 11.)  On or about July 2016, VForce learned that Zurich was performing an audit on the policy for the prior year.  (UF ¶ 12.)  In or around July of 2016, Zurich announced the results of its audit to BTN2.  (UF ¶ 13.)  After its

/////
/////
/////
/////
/////
/////

4

audit, Zurich determined that VForce owed an additional $612,669.00 in premiums under the Policy.[5]  (UF ¶ 14.)

On January 30, 2019, Zurich filed its operative first amended complaint ("FAC") in this action, alleging that VForce breached the Policy by failing to pay the additional $612,669 allegedly found to be due as a result of the audit.[6]  (UF ¶¶ 15–16.)  Interest and attorneys' fees have since accrued and Zurich is now demanding nearly double that amount.  (UF ¶ 16.)  BTN2 did not defend VForce after it was served with the FAC and VForce's third-party complaint.  (UF ¶ 17.)  Neither BTN2 nor its successors in interest paid any of the increased policy premiums assessed by Zurich.[7]  (UF ¶ 18.)  VForce performed all of its contractual obligations as set forth in the December 22, 2014 Agreement.  (UF ¶ 19.)[8]

**B.    Procedural Background**

On March 12, 2019, VForce filed a crossclaim against defendant Cortech, LLC and a third-party complaint against third-party defendants BTN2; Accuire, LLC; Capserv, Inc.;

---

[5]  According to VForce, this additional premium amount was due to "the additional employees added to its overall staff as a result of its agreements with BTN2." (UF ¶ 14.) The third-party defendants purport to dispute this fact by asserting that during the policy period, premium increases due to the expanding payroll of third-party defendant Accuire, LLC ("Accuire") were paid by Accuire in advance. (*Id.*) As discussed below, this apparent disagreement is not material to the pending motion because the text of the Agreement does not condition or limit BTN2's responsibility to pay "[a]ny underpayments on the Policy premiums" as only arising in a particular situation, such as when the increase in the amount of premiums due is caused by Accuire's expanding payroll.

[6]  Zurich named one other defendant in its first amended complaint, defendant Cortech LLC, and alleges that "VForce merged with and became the wholly owned subsidiary of Cortech" on April 23, 2018. (Doc. No. 6 at ¶ 13.)  Defendant Cortech LLC is not mentioned in the pending motion.

[7]  The third-party defendants purport to dispute this fact but the evidence to which they cite does not support their contention.  (UF ¶ 18.)

[8]  VForce filed objections to certain evidence submitted by the third-party defendants in support of their opposition to the pending motion. (*See* Doc. No. 205-2.) Because the court will grant VForce's motion and would do so even if the court considered the evidence that VForce has objected to, the court need not substantively address VForce's objections. The third-party defendants also filed objections to certain evidence submitted by VForce in support of its pending motion. (*See* Doc. No. 207.) Because the court does not rely on that evidence in resolving the pending motions, the third-party defendant's objections are overruled as having been rendered moot by this order.

Kaiserkane Consulting, LLC; Michael DiManno; Richard Gardner; Charles Musgrove; Melissa Oglesby; Hybrid Financial Group, LLC; and Charles Forbes. (Doc. No. 15 at 1–3.) On May 26, 2020, the previously-assigned district judge granted VForce's motion for leave to amend its crossclaim and its third-party complaint and granted Charles Forbes's motion to dismiss VForce's claims asserted against him with leave to amend. (Doc. No. 67.) The previously-assigned district judge also granted VForce further leave to amend its crossclaim and third-party complaint on February 2, 2022. (Doc. No. 118.)[9] The undersigned granted VForce leave to file its third amended crossclaim and third-party complaint on July 30, 2024. (Doc. No. 199.) On August 2, 2024, VForce filed the operative third amended crossclaim against Cortech, LLC; BTN2; Accuire; Capserv, Inc.; Kaiserkane Consulting, LLC; Michael DiManno; Richard Gardner; Charles Musgrove; and Melissa Oglesby (collectively, "the cross-defendants"); and third-party complaint against Amazing Insurance, Inc; Alex Campos; and Employinsure LLC. (Doc. No. 201.) In its third amended crossclaim and third-party complaint, VForce asserts the following claims: (1) breach of contract, against all cross- and third-party defendants; (2) breach of the implied covenant of good faith and fair dealing, against all cross- and third-party defendants; (3) express indemnity, against all cross- and third-party defendants; (4) equitable indemnity, against the cross-defendants; (5) false promise, against the cross-defendants; (6) intentional misrepresentation, against the cross-defendants; (7) negligent misrepresentation, against the cross-defendants; (8) conspiracy, against the cross-defendants; and (9) unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.*, against the cross-defendants. (*Id.*)

On July 29, 2024, VForce filed the pending partial motion for summary judgment in its favor. (Doc. No. 198.) On August 12, 2024, BTN2; Accuire; Capserv, Inc.; Kaiserkane Consulting, LLC; Michael DiManno; Richard Gardner; Charles Musgrove; and Melissa Oglesby ("the third-party defendants") filed an opposition to the pending motion. (Doc. No. 204.) On August 22, 2024, VForce filed its reply thereto. (Doc. No. 205.) On August 29, 2024, the third-

---

[9] On August 25, 2022, this matter was reassigned to the undersigned. (Doc. No. 132.)

1  party defendants filed a motion for leave to file a surreply to VForce's reply. (Doc. No. 206.)
2  The court granted leave to file a surreply on August 30, 2024 (Doc. No. 208), and the third-party
3  defendants filed their surreply that same day (Doc. No. 209).

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*

7

1  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the
2  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
3  of its pleadings but is required to tender evidence of specific facts in the form of affidavits or
4  admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ.
5  P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773
6  (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for
7  summary judgment.").  The opposing party must demonstrate that the fact in contention is
8  material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the
9  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
10 non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

11         In the endeavor to establish the existence of a factual dispute, the opposing party need not
12 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
13 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
14 trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).
15 Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in
16 order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (citations
17 omitted).

18         "In evaluating the evidence to determine whether there is a genuine issue of fact," the
19 court draws "all inferences supported by the evidence in favor of the non-moving party."  *Walls v.*
20 *Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's
21 obligation to produce a factual predicate from which the inference may be drawn.  *See Richards*
22 *v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th
23 Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than
24 simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record
25 taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no
26 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586–87 (citations omitted).
27 /////
28 /////

**ANALYSIS**

**A.  Whether BTN2 Is Obligated to Pay the Additional Premiums**

VForce moves for summary judgment in its favor as to whether BTN2 was obligated under the Agreement to pay the additional premiums assessed by Zurich. (Doc. No. 198-1 at 8.) The Agreement is governed by Florida law. (*See* Doc. No. 198-5 at 65.) "Under Florida law, clear and unambiguous contract language may be interpreted as a matter of law." *Vathana v. EverBank*, 770 F.3d 1272, 1277 (9th Cir. 2014) (citing *Smith v. Shelton*, 970 So. 2d 450, 451 (Fla. Dist. Ct. App. 2007)). "Whether contract language is ambiguous is also a question of law." *Id.* (citing *Smith*, 970 So. 2d at 451). "A contract's wording is ambiguous if it is 'reasonably susceptible to more than one interpretation.'" *Id.* (quoting *Lambert v. Berkley S. Condo. Ass'n*, 680 So.2d 588, 590 (Fla. Dist. Ct. App. 1996)). "If the wording is ambiguous, interpreting the contract involves a factual question and summary judgment is inappropriate." *Id.* (citing *Smith*, 970 So. 2d at 451). "In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." *Roskovensky v. Sanibel Captiva Island Vacation Rentals, LLC*, No. 22-cv-00602-JLB-NPM, 2024 WL 1140893, at *6 (M.D. Fla. Mar. 15, 2024) (quoting *Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.*, 541 So. 2d 738, 739 (Fla. Dist. Ct. App. 1989)).

It is undisputed that § 4(a) of the Agreement states: "BTN 2 shall pay the premiums on behalf of VF on the Zurich worker's compensation policy as may be held by VF ('the Policy'). . . . Any underpayments on the Policy premiums shall be the responsibility of BTN 2." (Doc. No. 198-5 at 62.) It is further undisputed that § 4(d) provides: "For the avoidance of doubt, any increased costs (including increases in the Policy premiums) associated therewith shall be the responsibility of BTN 2." (*Id.*) Accordingly, the court easily concludes that the wording of the Agreement is not reasonably susceptible to more than one interpretation regarding BTN2's obligation to pay the premiums and is therefore not ambiguous.

In so finding, the court is not persuaded by the third-party defendants' argument that § 4(a) of the Agreement "contains a latent ambiguity under Florida law, as shown by the parties[']

subsequent course of performance."[10]  (Doc. No. 204 at 5.)  "A latent ambiguity is said to exist where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings." *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 844 (11th Cir. 2013) (quoting *Forest Hills Util., Inc. v. Pasco Cnty.*, 536 So. 2d 1117, 1119 (Fla. Dist. Ct. App. 1988)).  Here, the third-party defendants simply assert, without any further explanation, that "the ambiguity in Section 4(a)'s language ('BTN2 shall pay the premiums on behalf of VF on the Zurich workers' compensation policy *as may be held by VF*') is evident."  (Doc. No. 204 at 5) (emphasis in original).  The court disagrees with the third-party defendants in this regard.  In the view of the undersigned, no ambiguity is evident, either in § 4(a) or in any material provision of the Agreement.  Furthermore, the third-party defendants do not offer any suggestion as to what the phrase "as may be held by VF" could refer to, other than the workers' compensation policy that VForce and BTN2 agreed to purchase from Zurich.

       Without explaining the nature of the ambiguity in the Agreement, the third-party defendants then describe the following purported course of performance that, they argue, clarifies the supposed ambiguity:  The third-party defendants argue that BTN2 had earlier made another, separate agreement with VForce ("the Other Agreement").  (*Id.*; *see also* Doc. No. 204-3 at 23–27.)  The third-party defendants contend that under the Other Agreement, BTN2 had been obligated to make payments to VForce.  (Doc. No. 204 at 5–7.)  To explain the undisputed fact that BTN2 did pay workers' compensation premiums to Zurich, the third-party defendants argue that it paid those premiums merely for the sake of VForce's convenience.  (*Id.*)  Specifically, they argue that rather than make payments under the Other Agreement to VForce, who would then in turn have to pay premiums to Zurich, BTN2 simply made payments to Zurich directly and thereby cut out the middle-man—that is, VForce.  (*Id.*)  Notably, there is no mention of the Other Agreement in the Agreement.  Instead, § 14(j) of the Agreement states:  "This Agreement

---

[10] The third-party defendants note that they are not arguing that the course of performance established a modification to the Agreement.  (Doc. No. 204 at 6.)  They argue only that the course of performance is relevant for purposes of clarifying the terms of the Agreement.  (*Id.* at 6–7.)

10

contains the entire understanding between and among the parties and supersedes any prior understandings and agreements among them respecting the subject matter of this Agreement." (Doc. No. 198-5 at 65–66.)

However, this alleged[11] course of performance does not "clarify" any terms or provisions of the Agreement. In particular, it is entirely unclear how this course of performance clarifies the phrase "as may be held by VF" in the Agreement, as argued by the third-party defendants. Instead, the course of performance described by the third-party defendants directly contradicts the express language of the Agreement, which clearly and repeatedly requires BTN2 to pay the premiums. The Florida Supreme Court has recognized:

> Where the terms of a written agreement are in any respect doubtful or uncertain, or if the contract contains no provisions on a given point . . . and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the court, upon the principle that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract.

*Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 407 (Fla. 1974); *see also United States ex rel. GLF Constr. Corp. v. FEDCON Joint Venture*, No. 17-cv-01932-CES, 2019 WL 5295329, at *12 (M.D. Fla. Oct. 18, 2019) ("The intention of the parties, *when not clearly expressed*, may also be demonstrated by conduct.") (applying Florida law) (emphasis added). Here, the terms of the Agreement are not in any respect doubtful or uncertain, the contract contains multiple provisions specifically addressing the relevant points, the third-party defendants' proposed construction is not reasonable, and a finding that BTN2 is not obligated to pay the premiums would be "wholly at variance with the correct legal interpretation of the terms of the contract." *Blackhawk Heating*, 302 So. 2d at 407. The court finds that the

/////

---

[11] For the reasons discussed in this order, the course of performance described by the third-party defendants, even if appropriately supported by evidence before the court on summary judgment, would not provide any basis upon which to deny VForce's motion for summary judgment. Accordingly, the court need not—and therefore does not—consider whether the third-party defendants have come forward on summary judgment with any admissible evidence in support of their contention in this regard.

11

intent of the parties as to BTN2's obligation to pay the premiums was clearly expressed in the Agreement.

Accordingly, in light of the express and unambiguous terms of the Agreement, the court finds no genuine dispute of material fact as to BTN2's obligation to pay the premiums on the workers' compensation policy. *See Roskovensky*, 2024 WL 1140893, at *6 ("In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls.") (quoting *Acceleration Nat'l Serv. Corp.*, 541 So. 2d at 739).[12]

### B.     Whether BTN2 Breached the Agreement by Failing to Pay the Premiums

VForce moves also for summary judgment in its favor as to whether BTN2 breached the Agreement by not paying the additional premiums assessed by Zurich. (Doc. No. 198-1 at 1–2.) The court has already concluded above that there is no genuine dispute of material fact as to BTN2's obligation to pay the additional premiums assessed by Zurich. It is also undisputed that BTN2 did not pay those premiums.

The third-party defendants raise two arguments in their opposition, both of which are unpersuasive. First, they argue that the Agreement was terminated pursuant to § 13(g) of the Agreement when BTN2 exercised the option to reacquire full ownership of Accuire. (*See* Doc.

---

[12] The parties appear to believe that this dispute is governed by the Uniform Commercial Code as adopted by Florida ("the UCC"). (*See* Doc. Nos. 204 at 6 (the third-party defendants citing to Florida Statute § 671.205); 205 at 8–9 (VForce citing to the same)). The court notes that under Florida law, "[c]ontract disputes are governed by the common law if the contract was for services or the Uniform Commercial Code (UCC) if the contract was for goods." *Medmoun v. Home Depot U.S.A., Inc.*, No. 21-cv-01585-KKM-CPT, 2022 WL 1443919, at *9 (M.D. Fla. May 7, 2022) (citing *Allied Shelving & Equip., Inc. v. Nat'l Deli, LLC*, 154 So. 3d 482, 483 (Fla. Dist. Ct. App. 2015)). However, the outcome of the pending motion does not depend on whether the common law or the UCC applies. Indeed, while the third-party defendants appear to rely on Florida Statute § 671.205(1) in support of their argument regarding the course of performance, the court notes that another provision of that statute states that "the express terms of an agreement and any applicable course of performance . . . must be construed whenever reasonable as consistent with each other. If such a construction is unreasonable: (a) Express terms prevail over course of performance . . . ." Fla. State. § 671.205(5). Here, as discussed above, the express terms of the Agreement obligated BTN2 to pay the additional premiums assessed by Zurich. These terms cannot reasonably be construed as consistent with a course of performance purportedly suggesting that BTN2 was not so obligated. The express terms would prevail even under such circumstances pursuant to § 671.205(5).

No. 204 at 7; *see also* Doc. No. 198-5 at 64 ("(g) If BTN2 exercises the option, the Agreement terminates.")). The third-party defendants contend that because the Agreement was terminated upon the exercise of the option, BTN2 therefore never had an obligation to pay any of VForce's premiums in the first place. (Doc. No. 204 at 7.) Consequently, the third-party defendants argue, it was not in breach "for failing to [pay the premiums] before or after the Agreement terminated . . . ." (*Id.*) In reply, VForce argues that this argument "that somehow BTN2 never breached the Agreement because it never had an obligation to pay the premiums . . . is nonsensical and devoid of any factual support from the Agreement itself or any legal authority whatsoever." (Doc. No. 205 at 5.) VForce further argues that the third-party defendants have provided "no facts or legal authority that would support the conclusion that the termination of an agreement absolves a party of all past duties, obligations and breaches of that agreement because there is none." (*Id.* at 6.) The court agrees with VForce in this regard. That Zurich conducted the audit and discovered the unpaid premiums after the Agreement had terminated does not somehow relieve BTN2 of its already-incurred obligation to pay the premiums relating to the period of time for which the Agreement was in existence.

Second, the third-party defendants argue that the additional premiums assessed by Zurich did not result from an increase in Accuire's payroll, as alleged by VForce. (Doc. No. 204 at 7.) But as noted above, nothing in the Agreement suggests that BTN2 was only obligated to pay the premiums under certain conditions or for certain reasons. Rather, the clear text of the Agreement states without qualification that "[a]ny underpayments on the Policy premiums shall be the responsibility of BTN 2." (*See* Doc. No. 198-5 at 62.)

Accordingly, the court concludes that there is no genuine dispute of material fact as to BTN2's breach of the Agreement in this regard.

**C.   Whether BTN2 Breached the Agreement by Failing to Defend and Indemnify VForce**

Next, VForce moves for summary judgment in its favor as to whether BTN2 was obligated to defend and indemnify VForce when it was sued by Zurich, and as to whether BTN2 breached the Agreement when it failed to do so. (Doc. No. 198-1 at 10.) It is undisputed that

§ 7(a) of the Agreement states that "BTN 2 will defend, indemnify, and hold VF . . . harmless from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by BTN 2's breach of this Agreement . . . ." (UF ¶ 9.) The third-party defendants do not dispute that BTN2 did not defend and indemnify VForce when it was sued by Zurich. Instead, they argue only that BTN2 was not obligated to do so because the claims in the suit brought by Zurich were not the result of BTN2's breach of the Agreement. (Doc. No. 204 at 7; *see also* Doc. No. 204-1 at 5.) As discussed above, the court has rejected the third-party defendants' argument in this regard. The court has found no genuine dispute of material fact that BTN2 was obligated to pay the additional premiums sought by Zurich and breached by failing to do so. Accordingly, the court concludes that there is no genuine dispute of material fact that BTN2 was obligated to defend and indemnify VForce when it was sued by Zurich, and that BTN2 breached the Agreement when it failed to do so.

## CONCLUSION

Cross-defendant and third-party plaintiff VForce Inc. ("VForce") has moved for partial summary judgment seeking a judicial determination that: (i) cross- and third-party-defendant Bean Team Network 2 LLC ("BTN2") was and is obligated to pay the additional premiums assessed by plaintiff Zurich American Insurance Company of Illinois ("Zurich"); (ii) BTN2 breached the Agreement by failing to pay such additional premiums; (iii) BTN2 was and is obligated to defend and indemnify VForce in the present action brought against VForce by Zurich; and (iv) BTN2 breached the agreement by failing to defend and indemnify VForce after VForce was sued by Zurich. (Doc. No. 198.) For the reasons discussed above, VForce's motion for partial summary judgment in its favor is hereby granted.

IT IS SO ORDERED.

Dated:  **October 8, 2024**                    *Dale A. Drozd*
                                                                   DALE A. DROZD
                                                                   UNITED STATES DISTRICT JUDGE